Trina D. **RINKER**, Appellant
(Defendant Below),

v.

**STATE of Indiana, Appellee.**

No. 48A02–8907–CR–00357.

Court of Appeals of Indiana,
Second District.

Jan. 15, 1991.

Rehearing Denied Feb. 27, 1991.

---

William B. Byer, Jr., Byer & Gaus, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

On March 8, 1989, Trina D. Rinker (Rinker) was convicted of a class D felony, neglect of a dependent, a son born in March, 1988. Prior to that time, in 1984, she had been convicted of neglect of another child and received a suspended ten year sentence. As a result of the charges here appealed, the 1984 probation was revoked. The sentencing upon the instant offense took place May 8, 1989.

Upon appeal, Rinker challenges various evidentiary rulings by the court, the sufficiency of the evidence for conviction of the instant neglect charge, and in light of that alleged insufficiency, asserts that revocation of her probation was invalid.

## I.

■ We choose to treat the sufficiency argument first because our determination upon that issue carries with it validation or reversal of the probation revocation.

After the March, 1988 birth of the boy, case workers made numerous home visits during April–May. The child did not gain weight and appeared to be nutritionally deficient. Rinker was instructed to take the child to a doctor. During several June visits the baby was found to still be greatly underweight and unresponsive to stimuli. On one such visit, the baby and his bedding were covered with feces. The baby was observed to be extremely thin. He failed to respond to flies on his face. Rinker was told to get the child to the doctor right away. She promised to do so but did not. The baby was not seen by a doctor until one week later at which time his medical condition was deemed serious and caused in part by inadequate nutrition. In addition, the child's head was flat on the right side, would not turn, and his eyes were fixed. The boy's arms and legs were stiff. He could emit only a "weak cat-like cry."

With simple nutrition during his subsequent eight day hospitalization, the baby's condition improved. He was discharged to the custody of foster parents where he remained until August 30. On that date he was returned to Rinker. He had gained substantial weight during the time and his condition was vastly improved.

One week later, it was observed that the boy's condition had regressed and that the living conditions were filthy. When asked whether she had obtained follow-up medical care, Rinker replied that she did not have time. Upon court order, the baby was removed from Rinker's custody.

Rinker contends that the State failed to prove that she "knowingly or intentionally" engaged in conduct which "place[d] the [child] in a dangerous situation" as required by I.C. 35–46–1–4. *Hill v. State* (1989) 2nd Dist., Ind.App., 535 N.E.2d 153. She points to evidence that she kept various appointments during April–May to take the child to the welfare office and that at such times the boy was clean and well dressed. She demonstrated love and affection for the child. Various inattentions were explained by the need to care for her other children and failure to seek medical attention was at times occasioned by difficulty in obtaining baby sitters and by her belief that she did not have a valid Medicaid card.

This evidence is controverted by the fact that during the period of her probation she was aware of her eligibility for food stamps and Medicaid and that she did in fact participate in those programs. The culpability requirement of knowing or intentional conduct is provided by the evidence that Rinker continually neglected to provide adequate nutrition and reasonably clean living conditions despite having had extensive prior counseling, instruction and hands-on guidance with respect to the care and feeding of babies and as to general homemaking skills.

Although the conduct here is not so egregious as that present in most convictions under this statute, it is sufficient to permit a determination of guilt beyond a reasonable doubt. *See McClaskey v. State* (1989) Ind., 540 N.E.2d 41; *Hill v. State, supra,* 535 N.E.2d 153; *McMichael v. State* (1984) 4th Dist. Ind.App., 471 N.E.2d 726. *See also* cases collected at 12 ALR 2d 1047–1051 and Later Case Supplement.

Rinker's sole challenge to the revocation of her probation and the sentence imposed therefor, is the sufficiency of the evidence to support this underlying conviction. Our determination in that respect carries with it an affirmance of the probation revocation.

## II.

The various evidentiary rulings challenged upon appeal will be treated in the same order presented by appellant.

### A.

■ Over an objection as to relevance, the trial court permitted a witness to testify that before the baby involved in this case was born, Rinker had indicated that she did not want any more children.

It is not error to admit evidence merely because its probative value may not be strong and its tendency to prove a material fact is relatively weak. Such deficiency goes to the weight to be given the evidence rather than to its admissibility. *Brown v. State* (1985) Ind., 480 N.E.2d 938. In the case before us, it was Rinker's position that she loved her son and that she did not knowingly ignore his nutritional and medical needs. The evidence challenged here bears somewhat upon the presence or lack of attachment to the child and to his best interests. Although it would not have been erroneous to exclude that testimony its admission does not constitute reversible error. This is particularly true in light of Rinker's direct testimony that she did in fact say, prior to the son's birth, that she did not want more children.

### B.

Rinker sought and was denied a mistrial after a witness volunteered that caseworkers were supervising her in 1977 "due to neglect". Record at 1385. This interjection of alleged neglect prior to the conduct which resulted in the instant offense was in response to a question concerning the provision of nutritional education prior to 1984. The prejudicial impact of the testimony was diminished by the context in which it was admitted. In any event, the trial court admonished the jury to disregard the comment.

The granting of a mistrial is an extreme remedy lying within the sound discretion of the trial court. *McCovens v. State* (1989) Ind., 539 N.E.2d 26. Given the admonishment here, no reversible error occurred. *Willis v. State* (1987) Ind., 510 N.E.2d 1354.

### C.

Rinker next argues that the trial court erroneously permitted testimony from a doctor and from a friend of Rinker's. She asserts that the evidence constitutes inadmissible hearsay.

The physician whose examination led to the baby's hospitalization testified that when the child was brought in a staff member told him that he appeared to be ill. In objecting, Rinker suggests that the answer was solicited in order to prove that the baby was in fact sick. We note, however, that the testimony was elicited with respect to the June 21, 1988 occasion when all four Rinker children were brought in and as to why the doctor saw the three month old baby boy ahead of the other children. The answer was in response to a legitimate question and merely explained why he did what he did. It was properly admitted. *See Gregory v. State* (1988) Ind., 524 N.E.2d 275; *Boyd v. State* (1986) Ind., 494 N.E.2d 284; *Bray v. State* (1982) Ind., 430 N.E.2d 1162.

Even were it otherwise, we discern no prejudice to the defendant. A hearsay statement that the child appeared to be ill pales into insignificance when within moments of that statement, it was established as a fact that the child was so ill as to require hospitalization.

The testimony from Rinker's friend related a telephone conversation in which Rinker indicated her understanding of a term used by the welfare personnel, "failure to thrive". The term had been used in reference to the baby's condition. Rinker objected, claiming it was hearsay and was offered to prove the fact of the child's condition.

In terms of whether Rinker's conduct was knowing or intentional, her understanding of the duties of parenthood *vis a vis* nutrition and nurturing is relevant. In this sense the evidence was not offered to prove the actual condition of the child but was offered and tended to prove Rinker's understanding and knowledge of the needs of the child. Rinker told the friend that she and her husband needed to hold and cuddle the baby more. Rinker's statement to the friend could be reasonably construed as an admission and understanding of her neglectful conduct. See *Smith v. State* (1980) 2nd Dist. Ind.App., 400 N.E.2d 1137. It was admissible.

### D.

Rinker's final contention is that the trial court erred in excluding the opinion of

a welfare worker as to whether Rinker and her husband appeared to be persons who would neglect their child.

Testimony is not necessarily to be excluded merely because it constitutes an opinion upon the ultimate issue. *Ferguson v. State* (1985) Ind., 478 N.E.2d 673. Such rulings lie within the sound discretion of the trial court. As to such matters, in *Augustine v. State* (1984) Ind., 461 N.E.2d 101, the court stated:

"... the jury is as well qualified to form an opinion based upon the facts presented to it as any witness, even an expert witness." 461 N.E.2d at 107.

The court did not err in sustaining the State's objection to the question.

For the reasons set forth, the judgment is affirmed.

RATLIFF, C.J., and SHIELDS, P.J., concur.