# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 27 2016, 8:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Starlon Lewis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 27, 2016

Court of Appeals Case No.
49A02-1509-CR-1393

Appeal from the Marion Superior Court

The Honorable Christina R. Klineman, Judge

Trial Court Cause No.
49G17-1412-F6-56662

**Mathias, Judge.**

[1] Starlon Lewis ("Lewis") was convicted in Marion Superior Court of Level 6 felony neglect of a dependent. Lewis appeals and presents two issues, which we

restate as: (1) whether the neglect of a dependent statute is unconstitutionally vague; and (2) whether the State presented sufficient evidence to support Lewis's conviction.

[2] We affirm.

## Facts and Procedural History

[3] Lewis and Acacia Richardson ("Richardson") married in 2011 and had one son together, S.L., who was born in 2012. Shortly after S.L.'s birth, Lewis and Richardson separated, and Lewis had sole custody of S.L. from the time he was four months old. Lewis moved to Mississippi, but in November 2014, Lewis moved back to Indianapolis.

[4] On the night of December 19, 2014, Richardson and Lewis got into a heated argument after another woman left a comment on one of Lewis's Facebook posts. As Richardson was calling someone on her mobile phone, Lewis grabbed the phone from Richardson's face. Richardson claimed[1] that, in so doing, Lewis's thumb hit her in the eye, but Lewis claimed that he merely touched her face. Regardless, Richardson responded by punching Lewis in the face. Lewis then threw Richardson's phone against the wall, breaking it. Richardson claimed that Lewis then grabbed her by the neck and threw her against the wall. Lewis claimed that he simply pushed Richardson, who "may" have then fallen.

---

[1] As explained *infra*, although the State charged Lewis with battery, the jury acquitted him of these charges.

Lewis then went to get S.L. and began to pack the child's things and dress him for the cold weather. Although there was conflicting evidence regarding why, the child was wearing only a t-shirt and a sock and shoe on one foot.[2] Lewis went to the family car to leave with S.L., but when Richardson attempted to stop Lewis, he put the child in the front passenger seat, unrestrained. Richardson jumped into the back seat as Lewis drove away. Lewis then began to drive on the snowy, icy streets at approximately 40-45 miles per hour even though the posted speed limit was 30 miles per hour.[3]

While she was in the back seat, Richardson used another mobile phone to call 911 and reported that Lewis had "kidnapped" her and stolen her car. During the 911 call, Richardson yelled at Lewis to "get the f**k away from me." Ex. Vol., State's Ex. 1. Lewis attempted to hit Richardson while he was driving. When Richardson was still on the phone with the 911 operator, Lewis stopped the car, threw the keys into the street, and fled on foot with S.L, who was still clothed only in a shirt and one shoe and sock, into the icy cold winter night. Indeed, it was snowing and the temperature was approximately 15° Fahrenheit at the time. The 911 call recorded Richardson yelling at Lewis "my baby will freeze, he's only two." *Id*. Richardson attempted to chase Lewis but ultimately

[2] Lewis claims that Richardson took some of S.L.'s clothes off after he had dressed him.

[3] Lewis claims that he drove "pretty much" the speed limit, but this directly conflicts with Richardson's testimony that Lewis drove in excess of the speed limit. On appeal, we consider only the evidence favorable to the jury's verdict.

returned to her car where she awaited the police. Lewis and S.L. ended up spending the night at a hotel.

On January 5, 2015, the State charged Lewis with seven counts: Count I, Level 6 felony strangulation; Count II, Level 6 felony neglect of a dependent; Count III, Level 6 felony criminal recklessness; Count IV, Level 6 felony domestic battery; Count V, Level 6 felony battery in the presence of a child; Count VI, Class A misdemeanor domestic battery; and Count VII, Class A misdemeanor battery resulting in bodily injury. A jury trial was held on August 20, 2015, and immediately before trial, the State dismissed Counts I and III. The jury found Lewis guilty of Level 6 felony neglect of a dependent and acquitted him of all other charges. The trial court then imposed an alternative misdemeanor sentence of 180 days, with 168 days suspended, and 12 days of credit for time served. Lewis now appeals.

## I. The Neglect of a Dependent Statute is Not Unconstitutionally Vague

Lewis first argues that the neglect of a dependent statute is unconstitutionally vague as applied to him. However, Lewis made no challenge to the constitutionality of the neglect of a dependent statute before the trial court. We therefore agree with the State that Lewis has not properly preserved this issue for appeal.

As this court has explained previously:

> Indiana Code section 35-34-1-6(a) [] provides that "[a]n indictment or information is defective when . . . the statute

defining the offense charged is unconstitutional or otherwise invalid." Further, Indiana Code section 35-34-1-4(a)[] provides that the trial court "may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds: . . . (1) The indictment or information, or any count thereof, is defective under section 6 of this chapter." This statute further requires that such a motion "be made no later than . . . twenty (20) days if the defendant is charged with a felony . . . prior to the omnibus date." I.C. § 35-34-1-4(b)(1). A motion made after this time "may be summarily denied if based upon a ground specified in subdivision (a)(1)[.]" I.C. § 35-34-1-4(b). In *Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985), our supreme court noted these statutory provisions and held, "Generally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *See also Rhinehardt v. State*, 477 N.E.2d 89, 93 (Ind. 1985) (holding that defendant failed to preserve claim that statute was unconstitutionally vague where he failed to raise the issue prior to trial by a timely and proper motion to dismiss).

*Baumgartner v. State*, 891 N.E.2d 1131, 1135-36 (Ind. Ct. App. 2008).

[10] Lewis does not deny this but notes that Indiana courts have still considered the merits of constitutional claims even though a defendant did not properly preserve the issue by filing a motion to dismiss at trial. *See, e.g.*, *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992) (addressing defendant's *pro se* motion attacking constitutionality of statute even though it was raised for the first time in the motion and defendant was represented by counsel on appeal); *see also Johnson v. State*, 38 N.E.3d 686, 689 (Ind. Ct. App. 2015) (citing *Boyd v. State*, 889 N.E.2d 321, 323-24 (Ind. Ct. App. 2008); *Vaughn v. State*, 782 N.E.2d 417 (Ind. Ct. App. 2003), *superseded by statute on other grounds*) (all considering merits of

constitutional challenge to statute even though the issue was not raised before the trial court).

[11] However, the fact remains that the holdings in *Payne* and *Rhinehardt* have not been overruled, and unless our supreme court clarifies this area of the law, we will continue to hold that the failure to file a motion to dismiss results in waiver of the issue on appeal. *See Baumgartner*, 891 N.E.2d at 1135 (acknowledging *Morse, Boyd,* and *Vaughn*, but concluding that defendant failed to preserve claim regarding the constitutionality of a statute by failing to file a motion to dismiss raising the constitutional challenge).

[12] Even if we were to consider the merits of Lewis's claim, he would not prevail. A defendant who claims a statute is unconstitutional faces a difficult burden:

> When a statute is challenged as unconstitutional, we presume the statute is constitutional. It is the defendant's burden to rebut this presumption, and we must resolve all reasonable doubts in favor of the statute's constitutionality. A statute will not be held to be unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct. A statute may also be impermissibly vague if its terms invite arbitrary or discriminatory enforcement. There must be something in the criminal statute in question to indicate where the line is to be drawn between trivial and substantial things, so that erratic arrests and convictions for trivial acts and omissions will not occur. However, a statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case. The defendant is not at liberty

to devise hypothetical situations which might demonstrate vagueness.

*Baumgartner*, 891 N.E.2d at 1136 (citations omitted).

[13] Here, Lewis challenges the constitutionality of the statute defining the offense of neglect of a dependent, which provides in relevant part:

> A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
>
>> (1) *places the dependent in a situation that endangers the dependent's life or health*;
>
>> \* \* \*
>
> commits neglect of a dependent, a Level 6 felony.

Ind. Code § 35-46-1-4(a) (emphasis added).

[14] The charging information alleging that Lewis committed neglect of a dependent generally tracks this statute, providing:

> On or about December 19, 2014, STARLON LEWIS having the care of S.L., a dependent, did knowingly place said dependent in a situation that endangered the dependent's life or health, to-wit: drive with child in the front seat of the car without safety restraints.

Appellant's App. p. 17.

[15] Lewis claims that his behavior was also covered by Indiana Code section 9-19-11-2(a), which provides in relevant part:

> A person who operates a motor vehicle in which there is a child less than eight (8) years of age who is not properly fastened and restrained according to the child restraint system manufacturer's instructions by a child restraint system commits a Class D infraction.

[16] Lewis contends that the charging information alleging that he committed Level 6 felony neglect of a dependent actually "alleges nothing beyond what is an infraction under Indiana Code § 9-19-11-2." Appellant's Br. p. 14. He further argues that the General Assembly has made a policy decision that the failure to restrain a child in a vehicle should be an infraction punishable by a fine, not a felony as alleged by the State. According to Lewis, the neglect of a dependent statute "leaves ordinary people to guess the point at which the risk posed by failing to restrain a child in a moving vehicle becomes felony child neglect." *Id*. We disagree.

[17] The failure to restrain statute applies to anyone who operates a motor vehicle in which there is any unrestrained child, not just a dependent in the care of the defendant, under the age of eight years. Moreover, there is no *mens rea* requirement in the failure to restrain statute. *See Hevenor v. State*, 784 N.E.2d 937, 941 (Ind. Ct. App. 2003) (noting that infractions are civil in nature and that there need be no showing of *mens rea* before judgment may be entered and that a mere showing that the statute was violated by the defendant is sufficient); *Pridemore v. State*, 577 N.E.2d 237, 239 (Ind. Ct. App. 1991) ("There need be no showing of *mens rea* before judgment may be entered in an infraction case because it is not a criminal matter."). Thus, the driver of a car in which there is

an unrestrained or simply improperly-restrained child commits an infraction. This is true regardless of whether the operator, or someone else, simply forgot to restrain the child or accidentally restrained the child improperly. The failure to restrain statute thus imposes strict liability on any driver of a vehicle in which there is an improperly restrained child.

[18] In contrast, the neglect of a dependent statute requires that the defendant knowingly or intentionally place a dependent in the defendant's care in a situation that endangers the dependent's life or health. I.C. § 35-46-1-4(a)(1). Thus, in addition to a *mens rea* requirement, an additional element requires the endangered person be a dependent in the care of the defendant, not merely any child.[4]

[19] Accordingly, if a driver unintentionally forgets to fasten, or merely improperly fastens, any child in a restraint, he or she commits an infraction. However, if—as alleged in the charging information here—a driver knowingly fails to fasten a dependent child in the driver's care and drives with said child wholly unrestrained in the front seat such that this places the dependent in a situation that endangers the dependent's life or health, he or she commits Level 6 felony neglect of a dependent.

[20] We believe that individuals of ordinary intelligence would comprehend the neglect of a dependent statute sufficiently to adequately inform them of the

---

[4] We reject Lewis's claim that any child in a vehicle would *ipso facto* be a dependent in the care of the driver.

proscribed conduct, which here is knowingly driving a vehicle with a dependent child in the driver's care in the front seat of a car completely unrestrained, endangering the dependent child's life or health. This is separate and distinct from the failure to restrain statute, which applies when a vehicle is operated with any child in any circumstance who is improperly fastened or unrestrained. We therefore decline to hold that the neglect of a dependent statute is, as applied to Lewis under the facts and circumstances of the present case— unconstitutionally vague.

[21] We think Lewis's reliance on *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), is misplaced. In *Johnson*, the Court held that the "residual clause" of the Armed Career Criminal Act ("ACCA") was impermissibly vague. The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). The emphasized portion of this definition is referred to as the "residual clause," and deciding whether a particular crime fell within the residual clause "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 135 S. Ct. at 2557.

[22] The Court in *Johnson* held that this "ordinary case" analysis rendered the residual clause unconstitutionally vague for two reasons. First, the residual

clause left "grave uncertainty" about how to estimate the risk posed by a crime, as it tied the judicial assessment of risk to a judicially-imagined "ordinary case" of a crime, not to real-world facts or statutory elements. *Id*. Second, the residual clause left uncertainty about how much risk was required to qualify a crime as a violent felony. *Id*. at 2558. As explained by the Court, "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id*.

[23] The Court also rejected the Government's claim that its holding put the "dozens of federal and state criminal statutes [that] use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,'" in constitutional doubt. *Id*. at 2561. To the contrary, such statutes generally "require gauging the riskiness of the conduct in the which the defendant engages on a particular occasion," not a judicially-imagined "ordinary case." *Id*. Accordingly, the Court wrote, "[a]s a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Id*. (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

[24] In the present case, the neglect of a dependent statute does not require a court or jury to imagine some abstract "ordinary case." It instead simply requires the jury to determine if the defendant knowingly placed a dependent in a situation that endangers the dependent's life or health. We therefore conclude that *Johnson* is inapposite to the facts and circumstances currently before us.

The *Johnson* Court also acknowledged that the failure of "persistent efforts . . . to establish a standard" for the residual clause provided further evidence of vagueness. *Id*. Lewis claims that Indiana courts have faced several problems in construing the neglect of a dependent statute, thus offering evidence of the statute's vagueness. Lewis first refers to a split of authority in this court over whether to apply an objective or subjective standard when determining a defendant's culpability. However, this question was settled over thirty years ago when our supreme court held that the level of culpability required by the neglect statute was subjective. *See Armour v. State*, 479 N.E.2d 1294 (Ind. 1985).

Lewis also claims that case law demonstrates that the statute has produced inconsistent results in application. *Compare Ricketts v. State*, 598 N.E.2d 597, 601 (Ind. Ct. App. 1991) (holding that malnutrition, in and of itself, does not support a conclusion that a dependent's health or life is at risk or in danger), *with Rinker v. State*, 565 N.E.2d 344 (Ind. Ct. App. 1991) (upholding neglect conviction of parent who continually failed to provide adequate nutrition and reasonably clean living conditions for a child). However, even these holdings are not necessarily inconsistent, as the holding in *Rinker* referred not only to simply malnutrition but to *continually* failing to provide adequate nutrition and also the failure to provide reasonably clean living conditions.[5]

---

[5] The same is true for the other allegedly-inconsistent cases cited by Lewis. *Compare Scruggs v. State*, 883 N.E.2d 189, 190 (Ind. Ct. App. 2008) (reversing neglect conviction of mother who left "responsible" seven-year-old child home alone for three hours and child was later found to be with child's uncle), *with Thames v. State*, 653 N.E.2d 517 (Ind. Ct. App. 1995) (upholding neglect conviction of babysitter who left five-year-old

Lewis also notes that the neglect of a dependent statute has been attacked in the past as impermissibly vague but acknowledges that only one of these challenges was successful—an attack on a now-repealed version of the statute that included culpability for neglect that "may" endanger a dependent. *See State v. Downey*, 476 N.E.2d 121, 123 (Ind. 1985). None of this "evidence" persuades us that the section of the statute under which Lewis was charged was constitutionally vague as applied to the facts of the present case.

In sum, we conclude that the neglect of a dependent statute, as applied to the facts and circumstances of the present case, is not unconstitutionally vague.

## II. There Was Sufficient Evidence of Lewis's *Mens Rea*

Lewis also claims that the State failed to provide sufficient evidence to establish the "knowing" *mens rea* requirement of the neglect of a dependent statute. Of course, when reviewing a claim of insufficient evidence, we apply our well-settled standard of review: we will neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the jury to weigh any conflicting evidence. *McHenry v. State*, 820 N.E.2d 124, 126

---

child home alone and child was later found wandering the streets and defendant did not return home until two and one-half hours after child was found wandering); *compare also Dexter v. State*, 945 N.E.2d 220, 224 (Ind. Ct. App. 2011) (affirming neglect conviction of defendant who, despite being warned not to do so by defendant's mother and child's mother, threw a wet three-year-old child into the air above a bathtub, failed to catch the child, and child sustained fatal head trauma after hitting the tub), *trans. granted, summarily aff'd in relevant part*, 959 N.E.2d 235 (Ind. 2012), *with Gross v. State*, 817 N.E.2d 306, 310 (Ind. Ct. App. 2004) (reversing neglect conviction based on defendant and children playing a "hostage game," which the children enjoyed, consisting of taping the children's wrists and ankles together and the children attempting to escape). The holdings in these cases are not inconsistent but are merely application of the law to different facts and circumstances.

(Ind. 2005). We will consider only the probative evidence and reasonable inferences supporting the jury's verdict, and we will affirm if the probative evidence, and the reasonable inferences drawn from this evidence, could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[30] As set forth above, to convict Lewis of Level 6 felony neglect of a dependent, the State was required to prove that he had care of S.L. and *knowingly* placed S.L. in a situation that endangered S.L.'s life or health. I.C. § 35-46-1-4(a). A person engages in conduct knowingly if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Under the neglect of a dependent statute, this "knowing" *mens rea* requires "a subjective awareness of a 'high probability' that a dependent has been placed in a dangerous situation." *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011) (citing *Scruggs v. State*, 883 N.E.2d 189, 191 (Ind. Ct. App. 2008); *see also Gross v. State*, 817 N.E.2d 306, 308 (Ind. Ct. App. 2004) (citing *Armour v. State*, 479 N.E.2d 1294, 1297 (Ind. 1985)).

[31] Absent a confession, the trier of fact must generally infer the defendant's mental state from the surrounding circumstances. *Hightower v. State*, 866 N.E.2d 356, 368 (Ind. Ct. App. 2007), *trans. denied*. Indeed, "[b]oth intentional and knowing actions may be inferred from the circumstances." *Ritchie v. State*, 809 N.E.2d 258, 270 (Ind. 2004). Accordingly, on appeal, we must look to the facts and circumstances of the case to determine if there is sufficient evidence to support a finding that the defendant acted knowingly. *Villagrana*, 954 N.E.2d at 468.

[32] Lewis argues that the evidence was insufficient to prove this subjective, knowing *mens rea*. He instead argues that the evidence established only that this was an "isolated incident" with no evidence that he was subjectively aware that there was a high probability that he placed S.L. in a situation that endangered S.L.'s health or life. We disagree.

[33] The facts most favorable to the jury's verdict reveal that Lewis got into an argument with Richardson that turned physical. He then hurriedly dressed S.L. and attempted to leave in the car. When he could not put S.L. in the back seat, he placed the child in the front seat of the car wholly unrestrained. He also drove in excess of the speed limit in icy and snowy conditions as he continued to argue and attempt to strike Richardson, who was in the back seat. From these facts, the jury could reasonably infer that Lewis was subjectively aware of a high probability that he placed J.L. in a situation that endangered J.L.'s life or health. Lewis's arguments to the contrary are little more than a request that we credit his testimony, reweigh the evidence, and come to a conclusion other than that reached by the jury. However, this is not our role as an appellate court. *See McHenry*, 820 N.E.2d at 126.

## Conclusion

[34] The neglect of a dependent statute is not unconstitutionally vague as applied to the facts and circumstances of the present case, and the evidence before the jury was sufficient from which it could infer that Lewis knowingly placed his son in a situation that endangered J.L.'s life or health.

Affirmed.

Vaidik, C.J., and Barnes, J., concur.