

FILED

Aug 20 2015, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Tia R. Brewer
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Maurice Knight, *Appellant-Defendant,* | August 20, 2015 |
| | Court of Appeals Case No. 27A02-1411-CR-814 |
| v. | Appeal from the Grant Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Jeffrey D. Todd, Judge |
| | Trial Court Case No. 27D01-1405-FD-196 |

**Mathias, Judge.**

[1] Maurice Knight ("Knight") was convicted in Grant Superior Court of Class D felony invasion of privacy and four counts of Class D felony intimidation and sentenced to an aggregate term of six years. Knight appeals and presents six issues for our review, which we consolidate and restate as whether the State presented evidence sufficient to support Knight's convictions.

We affirm.

## Facts and Procedural History

At the time relevant to this appeal, Knight was in a romantic relationship with Deanna Foreman ("Deanna") and lived with Deanna in Swayzee, Indiana. On April 25, 2014, Deanna obtained a protective order against Knight. The order was taken to Knight at Deanna's home that evening by Grant County Sheriff's Deputy Kristin Sprunger. Knight, however, refused to accept the order and refused to sign it. Deputy Sprunger told Knight that he had to leave the property pursuant to the protective order, and she transported Knight in her patrol car to his parents' home in Marion, Indiana.

In the car, Knight told Deputy Sprunger that she was "overstepping [her] boundaries" and "overstepping the law." Tr. p. 83. He also told her that "he couldn't believe that Deanna had shamed him and shamed his family like that." *Id*. Knight also began to use his mobile phone to send text messages. Concerned that Knight was attempting to contact Deanna, Deputy Sprunger informed him that making contact with Deanna would violate the protective order and that, if he did contact her, he would be arrested for invasion of privacy. Knight seemed indifferent to Deputy Sprunger's warning.

On May 18, 2014, Deanna called the Sheriff's Department and stated that Knight had threatened her and was on his way to her home. Deputy Matt Ogden responded to the call and found Deanna in a state of fear. Deanna showed Deputy Ogden her iPhone, which contained messages she had received

that day from someone saved in the phone as "Maurice." Specifically, the messages were from 12:51 a.m. "Today," i.e., May 18, and included a statement that Knight was "ON MI WAY." Ex. Vol., State's Ex. 7 (spelling and capitalization in original). Despite his claim to be on his way, Knight did not come to Deanna's home that night.

[5] On May 20, 2014, Deputy Sprunger responded to a call at Deanna's home after Deanna had again called the Sheriff's Department. This time, Deanna thought that Knight had been to her home. While Deputy Sprunger was there, Deanna received a call on her iPhone. Knight's picture and name showed up on the phone. At Deputy Sprunger's request, Deanna answered the phone and handed it to her. Deputy Sprunger then heard Knight say, "Police, bitch, really police." Tr. p. 87. He also stated that he could not believe that Deanna had "shamed" him and his family. *Id*. He then told Deanna that she was "gonna get it." *Id*.

[6] On May 22, 2014, Knight was arrested for violating the protective order and charged with two counts of Class D felony invasion of privacy. While in jail, Knight telephoned Deanna several times. Because Knight was in jail, the calls were recorded. On June 10, 2014, Knight called Deanna from jail and told her that she had no "motherf**king choice" but to be with him. Ex. Vol. State's Ex. 6.[1] He also told her that he would "start my shit back up and get my goons back on your head." *Id*. Two weeks later, on June 24, 2014, Knight again spoke with

---

[1] This call was recorded and admitted into evidence on CD as State's Exhibit 6, with a file name of "6_10_14.1801.wav."

Deanna on the phone and, in a profanity-laced tirade, threatened to, among other things, "have your mother\*\*king head bashed in, bitch." *Id.*[2] On June 29, 2014, Knight again spoke with Deanna on the phone from jail. This time, he told her that if she hung up the phone, "I swear to God when I f\*\*king get out of here I'm going to bust your f\*\*king head." *Id.*[3] He also stated, "I swear when I get out of here, I'm going to fuck you up." He then told her to "have a good funeral, bitch." *Id.* On June 30, 2014, Knight telephoned Deanna and told her that when he was released, he was "going to beat the fuck out of [her] every f\*\*king day." *Id.*[4]

[7] On July 8, 2014, the State amended the charging information to add twenty-nine counts of Class D felony invasion of privacy and six counts of Class D felony intimidation. A bench trial was held on July 25, 2014. The trial court found Knight guilty of the first two counts of Class D felony invasion of privacy — for the incidents which occurred on May 18 and May 20. The court also found Knight guilty on the last four counts of Class D felony intimidation — for the calls made on June 10, June 24, June 29, and June 30, 2014. The court found Knight not guilty on the remaining counts.[5]

---

[2] This call is recorded on State's Exhibit 6 with the file name "6_24_14.1654.wav."

[3] This call is recorded on State's Exhibit 6 with the file name "6_29_14_2233.wav."

[4] This call is recorded on State's Exhibit 6 with the file name "6_30_14_0716.wav."

[5] Despite the trial court clearly finding Knight "not guilty" on these counts in the transcript, *see* Tr. p. 145, the abstract of judgment states that these counts were "dismissed." *See* Appellant's App. pp. 22-23.

[8] The court sentenced Knight on November 12, 2014, to concurrent terms of three years on the invasion of privacy convictions and concurrent terms of three years on the intimidation convictions and ordered the two groups of concurrent sentences to be served consecutively, for an aggregate term of six years. Knight now appeals.

## Discussion and Decision

[9] Knight claims that the State failed to present evidence sufficient to support his convictions. In reviewing such a claim, our standard of review is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied*. We will not disturb the jury's verdict if substantial evidence of probative value supports it. *Id*. As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id*.

[10] Knight claims the evidence was insufficient to support his convictions for invasion of privacy by violating the protective order on either May 18 or May 20, 2014.[6] To prove that Knight committed invasion of privacy as a Class D

---

[6] In the Statement of Facts section of his Appellant's Brief, Knight claims that the protective order was never properly served on him. This is apparently a reference to the fact that Knight refused to accept or sign the copy of the protective order when it was presented to him by Deputy Sprunger. Knight does not develop this one-sentence claim in the argument section of his brief, and we therefore will not consider it as a separate argument on appeal. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (concluding that defendant's argument was waived where he cited no authority in support of his position); Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]").

felony, the State was required to prove that Knight knowingly or intentionally violated a protective order and that he had a prior unrelated conviction for the same crime. *See* Ind. Code § 35-46-1-15.1 (2010). Here, Knight claims only that the evidence was insufficient regarding the identity of the person who called and texted Deanna. He does not argue that the texts and calls did not constitute violations of the protective order.

[11]    Knight notes that Deputy Ogden testified that no dates were on the text messages he saw on Deanna's phone and that Deanna could not recall at trial what date the text messages were sent. Knight overlooks, however, that Detective Ogden testified that the text messages he saw on Deanna's phone indicated that they had been sent "today," i.e., May 18, 2014. The phone also indicated that the texts had been sent from "Maurice," which is Knight's first name. Although it is possible that Deanna had placed Knight's name on someone else's telephone number and that someone else therefore sent the messages to Deanna, the trial court, acting as the trier of fact, was well within its discretion to believe that the messages did come from Knight on May 18, 2014, in violation of the protective order.

[12]    The same is true with regard to Knight's argument regarding the events on May 20, 2014.[7] Deputy Sprunger testified that after she arrived at Deanna's home, a

---

[7] Both before trial and at sentencing, Knight claimed that he and Deanna had gone to court on May 20, 2014 and that the trial court lifted the protective order. However, no evidence supporting this allegation was admitted at trial. Still, the trial court found Knight not guilty on the counts of invasion of privacy that occurred after May 20, 2014.

call came in to Deanna's phone indicating that it was from "Maurice." When Deputy Sprunger answered the call, she recognized the person on the line as Knight based on his voice and because he again stated that he couldn't believe that Deanna had "shamed" him and his family—the same phrase Knight used when Deputy Sprunger drove him to his parents' home on April 25, 2014. Knight now questions Deputy Sprunger's ability to recognize his voice after a twenty-minute car ride. However, this, too, was an issue of weight and credibility for the trier of fact to resolve. The trial court was within its discretion as the trier of fact to believe that it was Knight who telephoned Deanna on May 20 in violation of the protective order.

[13] Knight also claims the evidence was insufficient to support his convictions for Class D felony intimidation. Again, he does not argue that the conduct on the phone calls did not constitute intimidation; he simply argues that evidence was insufficient to establish that he was the one who placed the telephone calls from jail threatening Deanna. Although Knight refers to evidence that the jail logs indicate that another inmate placed the telephone calls, evidence from which the trial court could reasonably conclude that Knight was the one who actually spoke to Deanna was ample.

[14] Diane Foreman, Deanna's mother, testified that she recognized the voices on the recorded jail telephone calls as belonging to Deanna and Knight. Deputy Sprunger also testified that the voice on the recorded jail telephone calls belonged to Knight. Furthermore, Deanna referred to the person speaking to her on the phone as "Maurice," which is Knight's first name. From this, the

trial court could reasonably conclude that it was Knight who placed the threatening telephone calls to Deanna while he was in jail.

[15] Knight's citation to *Neill v. Biggers*, 409 U.S. 188 (1972), is unavailing. First, that case is about the admissibility of an in-court visual identification of a defendant by an eyewitness after an impermissibly suggestive pre-trial show-up identification. Knight does not challenge the admissibility of the audio tapes or the in-court identifications; he challenges their sufficiency to support his convictions. Moreover, in *Neill*, the court held that, under the totality of the circumstances of that case, no substantial likelihood existed of misidentification and that the in-court identification testimony was properly before the jury. *Id.* at 201.

[16] The same is true here. Diane Foreman testified that her daughter had dated Knight for over five years and that she had spoken to him during this time. Based on this, she testified that she was familiar with the sound of his voice. She then identified the voice in the recorded calls as Knight's. Deputy Sprunger was also familiar with Knight's voice and testified that she recognized Knight's voice on the recorded telephone calls. Furthermore, the voices in the recorded calls refer to the male voice as "Maurice" and the female voice as "Deanna." Accordingly, we can discern no error in the trial court relying on this evidence to determine that it was Knight who placed the telephone calls to Deanna.

## Conclusion

The State presented evidence sufficient to support Knight's convictions for Class D felony invasion of privacy and Class D felony intimidation. Knight's arguments on appeal are little more than a request that we consider the evidence in a light most favorable to him, reweigh the evidence, and come to a conclusion opposite that reached by the trial court as the trier of fact. This is beyond our prerogative as an appellate court.

Affirmed.

May, J., and Robb, J., concur.