# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2016, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Jesse R. Drum
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lisa Orwig, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 30, 2016 <br><br> Court of Appeals Case No. <br> 31A01-1604-CR-825 <br><br> Appeal from the Harrison Superior Court <br><br> The Honorable Joseph L. Claypool, Judge <br><br> Trial Court Cause No. <br> 31D01-1510-CM-634 |

**Mathias, Judge.**

[1] Following a jury trial in Harrison Superior Court, Lisa Orwig ("Orwig") was convicted of permitting her livestock to run at large, a Class B misdemeanor.

On appeal, Orwig claims that the State failed to present sufficient evidence to establish that she knowingly permitted her horse to run at large.

[2]    We affirm.

## Facts and Procedural History

[3]    Orwig is the owner of several horses, one of whom is a large, white draft horse named Al. For most of his life, Al was a stallion, but was later partially castrated to become a "proud cut" gelding, a surgical procedure to reduce or eliminate stallion-like behavior. Al is a somewhat aggressive horse who is difficult to handle. On numerous occasions over the years, Al has escaped from Orwig's property and wandered the surrounding area. Orwig admitted that Al had escaped more than twenty times from her property. While escaped, Al has damaged Orwig's neighbors' property and wandered into the road, creating a hazard for motorists. Orwig's neighbors had complained for years, asking her to keep Al under control, to no avail.

[4]    Orwig kept Al on her property, which includes at least one barn and a fence. However, the fence was in a poor state of repair and had several sections that Al could and clearly did ignore. The most secure place for Orwig to keep Al was in her barn, but Al did not like going into the barn. Therefore, Orwig often kept Al tied to a stationary object, such as a tree, a post, or even a trampoline. None of this kept Al on Orwig's property, and Al escaped at least ten times between March and October 2015. On one occasion, Al dragged the trampoline

to which he was tied into the middle of the adjacent road. He had also gotten himself tied up in the lead rope used to unsuccessfully restrain him.

[5] On one of the previous occasions where A1 had escaped, which occurred on March 11, 2015, Harrison County Animal Control Officer Bruce Lahue ("Officer Lahue") responded to the scene. Officer Lahue had already responded to at least six other calls regarding A1 escaping, so he delivered a notice to Orwig explaining the possible legal ramifications of her continuing failure to keep A1 properly enclosed on her property. This notice provided:

> As you are aware, over the past twelve (12) months our agency has responded to six (6) complaints concerning your horses being at large. The following correspondence is to make sure you understand our concerns and the action we plan to take to assure compliance with the Harrison County Animal Control Ordinance and Indiana Criminal Code 15-17-18-8 Animals Running At Large. The first issue to be addressed is the confinement of your white stallion. The horse has proven to be extremely defiant and difficult to restrain and as such causes us great concern for public safety. The second issue to be addressed also involves the restraint of the stallion. The practice of tethering the horse is not acceptable. On more th[a]n one occasion the horse has been found entangled and denied access to food and water. On 03/05/2015 the horse was found with the tether wound around its front leg in a manner restricting movement and circulation. The third issue is the condition of the fence. The fence is neither of adequate height or strength to contain livestock in accordance with Indiana law IC 32-26-9. We want to make sure you understand that we can no longer tolerate the violations and in the interest of public safety must enforce the laws of Harrison County and the State of Indiana. Please be advised that effective immediately any horse found at large will be considered a criminal violation and all subsequent investigations will be

coordinated with local law enforcement for the purpose of pursuing criminal charges and prosecution. You should also note that restraining the stallion with a lead when it's not under the immediate supervision of an adult human will be considered cruel and as such a violation of the Harrison County Animal Control Ordinance making you subject to a notice of violation and a $50-$250 fine. I hope we have made our position on this matter clear. We are in no way limiting your access to due process. The intent of this correspondence is to make you aware of the seriousness of this matter. Your immediate attention and compliance is required.

Ex. Vol., State's Ex. 5. Officer Lahue gave this notice to Orwig, who signed it, acknowledging her receipt thereof. *Id.*

[6] This case stems from Al's escape from Orwig's property seven months later, on the morning of October 7, 2015. Orwig left for work the prior evening and tied Al up to a four-by-four post next to her garage. Early the next morning, one of Orwig's neighbors, Connie Mullins ("Mullins"), noticed Al once again on her property. Mullins had previously spoken to Orwig, law enforcement, and animal control about Al's continued incursions onto her property. This time, however, she contacted the Harrison County Prosecutor's Office. The Prosecutor's Office then informed the Sheriff's office, who sent Deputy Mike Kurtz ("Deputy Kurtz") to investigate. Officer Lahue was also dispatched to the area.

[7] Officer Lahue arrived on the scene first and found Al on property belonging to another one of Orwig's neighbors, Larry Laduke ("LaDuke"). Al was still connected to the twenty-foot lead rope, which had become inextricably

ensnared with a child's bicycle, which itself was entangled in some weeds. Officer Lahue had to cut the lead rope to free it from the bicycle so he could secure Al for impoundment. When Deputy Kurtz arrived on the scene, he spoke with LaDuke and Mullins and took photographs of the area. He observed and photographed the fence surrounding Orwig's horse pasture, which was broken and had a "gaping hole" in it. Tr. p. 106.

[8] Orwig's daughter, who lived with her, noticed Officer Lahue's truck and observed him with Al. She exchanged words with the officer and telephoned her mother to inform her that Al was being impounded. Orwig returned home and spoke to the law enforcement and animal control officers. She admitted that her fencing was inadequate and stated that only an electric fence would keep Al contained, but she did not own an electric fence. She also acknowledged the prior notice she had received from animal control.

[9] The next day, the State charged Orwig with permitting her livestock to run at large, a Class B misdemeanor. A jury trial was held on March 3, 2016, at the conclusion of which the jury found Orwig guilty as charged. The trial court sentenced Orwig to 180 days, with twenty days executed and 160 days suspended. The court also imposed a $1,000 fine. Orwig now appeals.

## Standard of Review

[10] Orwig challenges the sufficiency of the evidence to support her conviction. Our standard of review in claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider

only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if substantial evidence of probative value supports it. *Id.* As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id.*

[11] Orwig was convicted under Indiana Code section 15-17-18-8(a), which provides, "Except as provided in subsection (b),[1] a person responsible for livestock or poultry who knowingly or intentionally permits the livestock or poultry to run at large commits a Class B misdemeanor." The term "livestock" means any domestic animals except: (1) aquatic animals, (2) fish, (3) dogs, (4) cats, and (5) poultry and other birds, excluding ratites.[2]

[12] It is undisputed that Al, a horse, fits the statutory definition of "livestock." Nor does Orwig claim that there was insufficient evidence to show that Al had escaped from her property and was running at large.[3] Orwig claims only that there was insufficient evidence to establish that she *knowingly* permitted Al to run at large.

---

[1] Subsection (b), which is inapplicable here, provides, "Subsection (a) does not apply to a person who keeps livestock on property by means of a cattle guard or another device under IC 8-17-1-2.1."

[2] A ratite is one of several species of large, flightless birds, i.e., ostrich, rhea, emu, cassowary, and kiwi. *See* "Ratite" http://www.oed.com/view/Entry/158522.

[3] The term "at large" is defined as "[a]t liberty, free; without restraint or check." http://www.oed.com/view/Entry/105843.

[13] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Orwig admits that Al had escaped from her property several times in the past but claims that, mathematically, there was only a small chance that Al would escape any given day. Therefore, she claims that it is impossible for her to have acted "knowingly," i.e., that she was aware of a high probability Al would run at large. We are unpersuaded by Orwig's mathematical calculations.

[14] The issue before the jury was not whether, on any given day, the odds were high that Al might escape and run at large. Instead, the issue before the jury was whether, on the day in question, Orwig was aware of a high probability that she permitted Al to run at large, i.e. without restraint or check. Orwig knew that Al had escaped numerous times in the past. She admitted that her fence was inadequate to keep Al on her property. She even admitted that the only thing that could keep Al on her property was an electric fence, which she did not have. She also stated that the one way she knew to keep Al contained was to put him in the barn, although he did not like to be put in the barn. Despite her knowledge of all of these facts, on the night in question, Orwig tied Al up to a four-by-four post with a rope, from which he easily broke free, as he had numerous times in the past. From this, the jury could reasonably infer that Orwig knowingly permitted Al to run at large when she tied him to a post, which she knew was insufficient to restrain him.

[15] Orwig notes that she testified that she told her daughter to keep an eye on Al while she was at work. She therefore claims that this case is akin to that in

*Villagrana v. State*, 954 N.E.2d 466 (Ind. Ct. App. 2011). In *Villagrana*, this court held that the evidence was insufficient to prove that the defendant knowingly placed his daughter in a situation that endangered her life or health when he left her unattended for twenty minutes under the mistaken assumption that she was being watched by her aunt. *Id.* at 469. We find *Villagrana* to be readily distinguishable.

[16] First and foremost, the jury was under no obligation to credit Orwig's testimony that she asked her daughter to watch A1. Indeed, Orwig's daughter did not corroborate her mother's testimony. She testified that she generally "took care of [A1] when my mom cannot." Tr. p. 126. She made no mention of an instruction by her mother to watch A1 on the day in question. Furthermore, Orwig left A1 unattended throughout the night and early morning, as Orwig's daughter testified that she herself left for school at 7:00 a.m. and did not return until 9:00 a.m., at which time A1 had already broken free. We decline to hold that Orwig's deliberate actions of leaving a horse who had repeatedly broken free from lead ropes tied to a post all night and into the morning, are equivalent to inadvertently leaving a child unattended for twenty minutes.

[17] We similarly find Orwig's citation to *Scruggs v. State*, 883 N.E.2d 189 (Ind. Ct. App. 2008), unavailing. In that case, this court held that the evidence was insufficient to establish that the defendant knowingly neglected her seven-year-old daughter by leaving her alone at home for three hours, where there was uncontradicted evidence that the defendant thought her child responsible enough to be left alone for a short time. *Id.* at 191. Here, by contrast, it was well

established that leaving Al tied only with a lead rope was an insufficient method to restrain him, yet Orwig left Al tied unattended to a post overnight and through the early morning.

[18] In short, we hold that the evidence presented by the State was sufficient to support Orwig's conviction.

[19] Affirmed.

Robb, J., and Brown, J., concur.