## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 27 2017, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen F. Hurley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Angela Beck,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 27, 2017

Court of Appeals Case No.
49A04-1606-CR-1320

Appeal from the Marion Superior Court

The Honorable William J. Nelson, Judge

Trial Court Cause No.
49G18-1505-F6-17359

**Mathias, Judge.**

[1] Angela Beck ("Beck") was convicted in Marion Superior Court of Level 6 felony theft. Beck appeals her conviction and argues that the evidence is insufficient to support her conviction.

[2] We affirm.

## Facts and Procedural History

[3] On March 27, 2015, at around 3:30 p.m., Lauren Peters ("Peters") went to a Suntan City tanning salon located in Indianapolis, Indiana. Peters wore her engagement ring, wedding ring, two other rings, and Fitbit to the salon. Tr. pp. 6, 9, 33, 35. Peters spoke to Suntan City employee Zoe Sutton ("Sutton") about the prices for tanning services. Sutton asked Beck for assistance in describing the tanning services options to Peters. Peters then waited in the lobby for several minutes for an available tanning room.

[4] Surveillance footage from the tanning salon shows that Peters entered Tanning Room Three at 3:44 p.m. Inside the room, Peters locked the door, undressed, and took off her rings and Fitbit. After she placed her clothing and purse on a table, and placed her rings and Fitbit on a shelf attached to the wall, Peters proceeded to tan. After tanning, Peters dressed, wiped the tanning bed with a towel, and placed the towel on the tanning bed. The surveillance video shows that Peters left Tanning Room Three at 3:56 p.m. Unfortunately, Peters inadvertently left her rings and Fitbit on the shelf in Tanning Room Three.

[5] The surveillance video also shows that Beck entered Tanning Room Three at 3:57 p.m. and remained in the room for approximately thirty seconds. When

Beck exited the room she looked toward the front of the store. Her hands were out of view of the camera. Beck then walked toward the back of the store, where supply closets, a bathroom, a towel caddy, and a laundry room are located. However, the back of the store does not have any surveillance cameras. Beck then returned to the front of the salon.

[6]     Just five minutes after she initially left the tanning salon, Peters returned because she realized that she did not have her rings or Fitbit. Peters entered the salon and explained that she had left her rings and Fitbit. Surveillance footage showed that Peters re-entered Tanning Room Three at 4:02 p.m.[1] Peters did not find her rings or her Fitbit in the room on the shelf where she left them. She noticed that the bed had a new folded towel on it and a sign indicating the bed had been sanitized. Between the time that Peters left the room, at 3:57 p.m., and the time that she re-entered and discovered her items were gone, at 4:02 p.m., Beck was the only other person that had entered Tanning Room Three.

[7]     When Peters exited Tanning Room Three, she went to speak with Sutton to see if her items had been located and returned to the front desk. Sutton went back to the room with Peters to search for the items. Sutton noted that the bed had been cleaned but that the reset button had not been pressed. Sutton then went to

---

[1] The surveillance footage viewed at trial cut off promptly at 4:00 pm. However, Detective Rincker had previously viewed the footage at the Suntan City location and had noted the times that each person entered and exited the room. Rincker concluded from his memory from viewing the footage, and from his notes taken while viewing the footage, that Beck was the only other person who entered the room between the time that Peters left and returned to the room.

the front of the salon and spoke to Beck in the office. Beck stated she did not know if she had cleaned that specific bed because the salon was busy that afternoon and she had cleaned a lot of beds. Peters explained she had just been there and accidentally left her items in Tanning Room Three. Beck referenced the computer and told Peters that the room had not been cleaned according to the computer system. Peters disagreed and said the room had been cleaned. Beck and Peters then went back to the room together.

[8] Inside the tanning room, Beck was dismissive and seemed rushed to leave the salon. They returned to the front of the salon where Jessi Bennett ("Bennett"), the assistant manager, became involved. Beck told Bennett she had to leave to pick up her kids. Bennett looked inside Beck's purse and patted her down, and Beck left the salon.

[9] Peters called the police from the salon to report her items had been stolen. After speaking with the police, Peters left the salon. At 6:30 p.m., Peters returned with her husband. They asked if anything had been found and if they could post flyers about the missing items the next day. Later that evening, Peters noticed that her phone had synced to her Fitbit both times that she had returned to the salon, at 4:30 p.m. and 6:30 p.m. This indicated that the Fitbit was still in close proximity to her phone while she was inside the tanning salon.

[10] Peters and her husband returned to the salon at 11:30 a.m. the next morning to post flyers. Peters later reported to Indianapolis Metropolitan Police Detective Rincker ("Detective Rincker") that she had seen Beck leaving the salon when

she drove into the parking lot with her husband. Peters immediately noticed that her Fitbit did sync when she was on the premises as it had the evening before. Peters also spoke to the salon manager who was on duty and learned that Beck was not scheduled to work that day.

[11] Within the next week, Detective Rincker viewed the salon's surveillance videos and spoke with Beck about her appearance on the videos. Beck agreed to meet in person with Detective Rincker the day after he originally viewed the video and had their initial conversation, but Beck did not attend the scheduled 9:00 a.m. meeting. Tr. pp. 161, 220-21. Thereafter, Detective Rincker called Beck multiple times but was unable to contact her. When Detective Rincker was finally able to speak with Beck, she refused to meet with him.

[12] On May 26, 2015, Beck was charged with Level 6 felony theft. A jury trial was held on April 21, 2016. The jury found Beck guilty of Level 6 felony theft. On May 23, 2016, Beck was sentenced to 545 days, with 543 days suspended to probation. On June 15, 2016, Beck appealed her theft conviction to this court.

## Standard of Review

[13] Beck challenges the sufficiency of the evidence to support her conviction. Our standard of review in claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if substantial evidence of

probative value supports it. *Id.* As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id.*

## Discussion and Decision

To convict Beck of Level 6 felony theft, the State was required to prove beyond a reasonable doubt that Beck knowingly or intentionally exerted unauthorized control over Peters's property with the intent to deprive Peters of its value or use, and the property was worth at least $750 and less than $50,000. Ind. Code § 35-43-4-2. Beck argues that the State failed to prove beyond a reasonable doubt that Beck stole Peters' rings and Fitbit. Beck contends that because the video footage presented in court was cut off at 4:00 p.m., there is a reasonable doubt about who entered the room between 4:00 p.m. and 4:02 p.m.

The State's evidence established that only Beck had the opportunity to commit this crime. The jury viewed surveillance footage that showed that only Peters and Beck entered the tanning room where Peters left her items. Although the surveillance footage presented to the jury was cut off at 4:00 p.m. Detective Rincker and Lauren Randall ("Randall"), the Suntan City district manager, both testified that they had watched the surveillance footage and observed that only Beck had entered the room between 3:57 p.m. and 4:02 p.m., the time period when Peters's items were stolen.

Beck argues that the surveillance video is unreliable because several days passed between the incident and the date when Detective Rincker and Randall reviewed it. Beck notes her own testimony that "anyone who could work on a

computer could click on [the footage] and view it." Tr. p. 232, Appellant's Br. at 12. Beck also cites Randall's testimony that managers and assistant managers were trained on the system and that tanning consultants had access to it. Tr. p. 192, Appellant's Br. at p. 12. However, Beck's argument concerning the reliability of the surveillance footage is only a request to reweigh the evidence, which our court will not do.[2]

[17]   At trial, the State also argued that Beck returned to the salon the day following the theft to remove Peters' items from the salon. In response, Beck claimed that she was not at the salon the next day. She argues that surveillance footage from March 28, 2015, the day following the theft, would support her argument, but did not substantiate her argument with the salon's surveillance footage. Beck's argument that she did not return to the salon on the day following the theft is a request that this court reweigh the evidence and judge the credibility of the witnesses, which we will not do.

[18]   Peters testified that when she and her husband arrived at the salon at approximately 11:30 a.m. the morning after the theft to hang flyers, they saw Beck leaving the salon. Peters's testimony also established that on the night of the theft her phone synced to her Fitbit at 4:30 p.m. and 6:30 p.m., each time that she returned to the salon the prior evening. Peters also testified that she attempted to sync her Fitbit to her phone while inside the salon around 11:30

---

[2] Beck did not challenge the admissibility of the surveillance video at trial. Nor does attempt to challenge the admissibility of the surveillance video under the fundamental error doctrine in her Appellant's Brief.

a.m. the next morning, but it did not sync. The jury was entitled to judge the credibility of the witnesses and chose to believe Peters.

## Conclusion

[19] Beck's argument on appeal is simply a request that we reweigh the evidence, which our court will not do. Therefore, we affirm Beck's Level 6 felony theft conviction.

[20] Affirmed.

Baker, J., and Pyle, J., concur.