## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2017, 7:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Terry L. Abbott, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 28, 2017 <br><br> Court of Appeals Case No. 20A03-1608-CR-1928 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> Trial Court Cause No. 20C01-1504-F2-7 |

**Mathias, Judge.**

[1]     Terry L. Abbott ("Abbott") was convicted in Elkhart Circuit Court of Level 2 felony dealing in methamphetamine, Level 2 felony dealing in a controlled

substance, Level 3 felony dealing in a controlled substance, and Level 5 felony possession of a handgun with obliterated identification. He appeals and raises two issues:

   I.   Whether the evidence is sufficient to support his constructive possession of the handgun with obliterated identification; and,

   II.  Whether the trial court abused its discretion when it denied his motion for a mistrial due to statements made by the prosecutor in closing arguments.

We affirm.

## Facts and Procedural History

On March 31 and April 14, 2015, the Elkhart Police Department's Interdiction and Covert Enforcement Unit ("ICE Unit") conducted controlled buys at Abbott's residence on Warren Avenue in Elkhart, Indiana. On those dates, Abbott sold illegal substances to a confidential informant.

At approximately 10:00 p.m. on April 15, 2015, the ICE Unit executed a search warrant at Abbott's residence, a small two-bedroom, one-story home with a basement. Abbott, James Nugent, and Jacob Sarber were in the home when the officers arrived. Nugent was temporarily living with Abbott, and Sarber was visiting the residence. The three men were in the living room when the officers arrived. Upon entering the residence, the officers smelled the strong odor of

marijuana and observed that the home was generally dirty, cluttered, and infested with mice.

[5] During the search, the officers found four firearms: two handguns underneath the recliner in the living room, a handgun in Abbott's bedroom, and a rifle in the kitchen. One of the handguns found under the recliner had an obliterated serial number. Vol. II, Tr. p. 241.

[6] The officers also found suspected illegal substances, including marijuana, methamphetamine, and several hundred pills including amphetamine and alprazolam. Tr. pp. 229-30. Finally, the officers found pipes, needles, baggies, scales, rolling papers, and bongs. The paraphernalia and suspected illegal substances were found throughout the home, including in Abbott's bedroom. However, the officers did not find anything incriminating in Nugent's bedroom. *Id.* at 234. Abbott was searched incident to his arrest, and he had over $6,700 in cash in his pocket.

[7] The pills and other substances were analyzed by Kimberly Ivanyo ("Ivanyo"), a forensic scientist with the Indiana State Police. Ivanyo confirmed that the white crystalline substance found in Abbott's home was methamphetamine weighing almost 18 grams. Ivanyo did not chemically test the pills found in Abbott's home but used references and her scientific knowledge to identify them as alprazolam and amphetamine.

[8] On April 21, 2015, Abbot was charged with Level 2 felony dealing in methamphetamine, Level 2 felony dealing in a schedule II controlled substance,

Level 3 felony dealing in a schedule IV controlled substance, and Level 5 felony possession of a handgun with obliterated identification. A jury trial was held on June 20, 2016.

[9] During closing argument, Abbott's counsel argued the State failed to prove that the pills were amphetamine, a schedule II controlled substance, and alprazolam, a schedule IV controlled substance, because the pills were not chemically analyzed. Counsel argued that it was not "the job of the defense to get the pills tested. It's the state's job to prove their case beyond a reasonable doubt . . ." Tr. Vol. II, p. 237. In rebuttal, the State began to argue, "[t]he state has the burden of proof and the state brought the case to trial; but he can't go that far and say it's all the state's fault. Because prior to trial the defense has every opportunity to . . . ." *Id.* at 245. Abbott objected and his objection was sustained. *Id.* Abbot then moved for a mistrial and argued that the State shifted the burden of proof to him. The trial court denied the motion but admonished the jury to disregard the State's argument. Vol. III, Tr. pp. 7-8.

[10] Abbott was found guilty of all four charges. The trial court ordered Abbott to serve an aggregate twenty-eight-year sentence executed in the Department of Correction. Abbott now appeals.

### *Constructive Possession of the Handgun*

[11] First, Abbott argues that the evidence is insufficient to support his Level 5 felony possession of a handgun with obliterated identification conviction.

Abbott claims the State failed to prove that he constructively possessed the handgun found under the recliner in his living room.

[12] Our standard of review for claims of insufficient evidence is well settled: we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if substantial evidence of probative value supports it. *Id*. As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id*.

[13] To convict Abbott of Level 5 felony possession of a handgun with obliterated identification, the State was required to prove that he possessed the "handgun on which the maker, model, manufacturer's serial number, or other mark of identification has been changed, altered, removed, or obliterated[.]" Ind. Code § 35-47-2-18. Most of the serial number on the handgun at issue had been scratched out. Vol. II, Tr. p. 208.

[14] Abbott did not actually possess the handgun at issue; therefore, the State was required to prove constructive possession. *See Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013) (stating that a conviction for possession of contraband may rest upon proof of either actual or constructive possession). A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item, and (2) the intent to

maintain dominion and control over it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

[15] Capability to maintain dominion and control over the contraband may be inferred from the defendant's possessory interest in the premises in which the item was found. *Id.* (citing *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004)).

> A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

*Id.* at 174-75 (citing *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999)) (internal citations omitted).

[16] The jury could reasonably infer that Abbott had the capability to maintain dominion and control over the handgun given his possessory interest in the premises where the handgun was found, i.e. the living room of his residence. The more difficult question is whether the State proved that Abbott intended to maintain dominion and control over the handgun.

[17]   The handgun at issue was not in plain view but found underneath the recliner Abbott was sitting in when the officers executed the search warrant at his residence.[1] Two other individuals were present in the house, a temporary house guest and a visitor. Drugs, drug paraphernalia, and items associated with dealing drugs, i.e. scales, baggies, and large amounts of cash, were found throughout the house except in the bedroom Abbott's house guest was using. Also, Abbott was dealing drugs from his residence.

[18]   In addition to the handgun with the obliterated serial number, the officers found a second handgun under the recliner, a handgun in Abbott's bedroom, and a rifle in the kitchen. The investigating officers also found a magazine and miscellaneous rounds of ammunition in the safe in Abbott's bedroom. Vol. II, Tr. p. 34.

[19]   Under these facts and circumstances, we conclude that the jury could reasonably infer that Abbott intended to maintain dominion and control over the handgun with the obliterated serial number found underneath the recliner where Abbott was sitting. Therefore, the State presented sufficient evidence to prove that Abbott constructively possessed the handgun.

---

[1] To support his argument, Abbott relies on evidence that a person present in the residence, but not Abbott, told the officer searching the living room that he had placed a handgun in the recliner. As the officer lifted the chair, he heard an object fall through the back of the chair. He then discovered two handguns near each other on the floor under the recliner. Vol. II., Tr. pp. 160-61. The individual who spoke to the officer did not claim that the handgun belonged to him.

## *Abbott's Motion for Mistrial*

[20]     Abbott also argues that the trial court abused its discretion when it denied his motion for mistrial, which he argues should have been granted because the State improperly shifted the burden of proof to the Defendant in its closing argument. A mistrial is an extreme remedy that is only justified when other remedial measures are insufficient to rectify the situation. *Hale v. State*, 875 N.E.2d 438, 443 (Ind. Ct. App. 2007), *trans. denied*. The decision of whether to grant or deny a motion for mistrial is committed to the sound discretion of the trial court and will be reversed only upon an abuse of that discretion. *Myers v. State*, 887 N.E.2d 170, 189 (Ind. Ct. App. 2008), *trans. denied*.

[21]     The denial of a motion for mistrial will be reversed only on a showing that the defendant was placed in a position of grave peril to which he should not have been subjected. *Id*. The burden on appeal is on the defendant to show that he was placed in grave peril by the denial of the mistrial motion. *Id*. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Bassett v. State*, 895 N.E.2d 1201, 1208 (Ind. 2008).

[22]     The State may not suggest that the burden of proof shifts to the defendant during a criminal case. *Dobbins v. State*, 721 N.E.2d 867, 874 (Ind. 1999). However, "[i]t is not improper for a prosecutor to focus on the uncontradicted nature of the State's case in closing arguments . . . ." *Id. See also Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (citing *Brown v. State*, 746 N.E.2d 63, 68 (Ind. 2001) (noting that "comment on the lack of defense evidence is proper so

long as the State focuses on the absence of any evidence to contradict the State's evidence . . . .").

[23] To prove that the pills found in Abbotts home were amphetamine and alprazolam, the State relied on the forensic scientist's visual identification of the pills. During closing argument, Abbott's counsel argued the State had not proved that the pills found in his home were amphetamine and alprazolam because the pills were not chemical analyzed. During rebuttal, the prosecutor responded, "[t]he state has the burden of proof and the state brought the case to trial; but he can't go that far and say it's all the state's fault. Because prior to trial the defense has every opportunity to…" Vol. II, Tr. p. 245. Abbott objected before the State finished its argument, but we can reasonably infer that the State would have argued that Abbott could have had the pills chemical analyzed.

[24] The prosecutor's argument was fleeting and incomplete. It was also made in response to Abbott's argument that the State had not proven that the pills were illegal substances as charged. Moreover, the trial court admonished the jury to disregard the prosecutor's statement and instructed it that the statement "should play no part in your deliberations." Vol. III, Tr. p. 8. Importantly, the jury was properly instructed that the State bore the burden of proving the charged crimes beyond a reasonable doubt and that Abbott was not required to present any evidence to prove his innocence. *See e.g.* Vol. III, Tr. p. 16. For these reasons, we conclude that Abbott has not established that he was placed in grave peril by the denial of his motion for mistrial.

# Conclusion

[25] The State proved that Abbott constructively possessed the handgun with the obliterated serial number. Also, the trial court did not abuse its discretion when it denied Abbott's motion for a mistrial.

[26] Affirmed.

Baker, J., and Pyle, J., concur.