**Jesus A. VILLAGRANA, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 08A05–1101–CR–21.**

Court of Appeals of Indiana.

Aug. 24, 2011.

Steven Knecht, Vonderheide & Knecht, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

Today we address a scenario that happens every day in every city of America, namely, a child's whereabouts is unknown by an inattentive parent. Here, a father was watching television when the mother told him that she was leaving to run errands and that he needed to watch their two-year-old daughter. The father was under the mistaken belief that the daughter was upstairs with his aunt, and she managed to get outside through a back door that had been left open. The father realized that his daughter had gone outside and located her within twenty minutes but not before a neighbor found the child and called the police. Almost eight months after the incident, the father was charged, and eventually convicted of class D felony child neglect. While the father was negligent, the child neglect statute requires intent beyond negligence. Consequently, we reverse his conviction.

*FACTS*

Jesus Alex Villagrana and Jerica Martin have a daughter, N.V., who was born on June 10, 2006. In August 2008, Villagrana, Martin, and N.V. were living in a house in Delphi. At that time, N.V. could walk, go up and down stairs on her own, and could open a door if it was ajar but was unable to turn a doorknob. The back door to Villagrana's house could be securely closed only by locking it. If the back door was not locked, it could be opened by simply pushing on it.

On August 9, 2008, Martin was at home in the kitchen with N.V. The kitchen is separated from the back door by a laundry room. Sometime after noon, Martin decided to run some errands and noticed Villagrana in the living room watching television with his brother, Marco Martinez. Martin told Villagrana that she would be gone about thirty minutes, that N.V. was in the kitchen, and asked him to watch N.V. Martin told him again because she did not think he was paying attention. Villagrana responded, "Okay," and continued watching television. Tr. p. 58. Martin exited the house through the front door, which was visible from the living room.

During that same afternoon, Kathy Shank, who lived a few houses away from Villagrana, was walking down an alley in the neighborhood when she saw N.V. heading in her direction. Shank saw a neighbor on the corner and yelled to her to not let N.V. walk into the street. Shank then went to N.V. and picked her up. Shank waited for five or ten minutes to see if anyone would come for N.V. and when no one did, she carried N.V. to her home to call the police and the Department of Child Services (DCS). After making the calls, Shank carried N.V. back to the corner where she had found her.

Delphi Police Officer David Yeager received a dispatch shortly before 1:00 p.m. and arrived at Shank's location within a few minutes. Shanks reported to Officer Yeager that she found N.V. outside, unattended, and walking towards the street. Shank said that she thought N.V. might reside in Villagrana's house because she came from that direction. Shank and Officer Yeager spoke for five to ten minutes before a young male[1] exited Villagrana's

1. The record is unclear regarding the identity of the young male, and there were approximately twelve to thirteen people living in Villagrana's house at that time.

residence and spoke with them. Approximately thirty seconds later, Villagrana joined them.

Villagrana explained that he was supposed to be watching N.V. and thought that she was upstairs with his aunt and her child. Villagrana had been watching television and did not realize that N.V. was missing until he went upstairs to get N.V. to give her something to eat. Villagrana searched the house and realized that the back door was open and that N.V. must have gone outside. Martinez went out the front door while Villagrana went out that back door. Villagrana was searching the back yard and a nearby alley when he heard Martinez yelling and ran to the front yard where he saw N.V. with Shank and Officer Yeager. Martin returned home approximately thirty minutes after she had left and found Villagrana and Officer Yeager on the corner with Shank, who was still holding N.V.

On April 3, 2009, the State charged Villagrana with Neglect of a Dependent,[2] a class D felony. A bench trial was held on January 19, 2010. At the conclusion of the State's case-in-chief, Villagrana moved for a directed verdict, which was denied. At the conclusion of the trial, the trial court took its ruling under advisement.

On April 1, 2010, the trial court issued an order finding Villagrana guilty as charged. The trial court held a sentencing hearing on December 31, 2010, where it sentenced him to one year and 103 days in the Indiana Department of Correction. Villagrana now appeals.

### DISCUSSION AND DECISION

■ Villagrana's sole argument on appeal is that the evidence was insufficient to sustain his conviction. In reviewing a challenge to the sufficiency of the evi-

dence, this Court neither reweighs the evidence nor judges the credibility of witnesses. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). Instead, we will consider only the evidence that is favorable to the verdict and the reasonable inferences drawn therefrom. *Id.* This Court will affirm the conviction unless no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Clark v. State,* 728 N.E.2d 880, 887 (Ind.Ct.App. 2000).

Indiana Code section 35–46–1–4(a)(1) provides that "[a] person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally: (1) places the dependent in a situation that endangers the dependent's life or health ... commits neglect of a dependent, a Class D felony." Here, the charging information alleged that Villagrana "knowingly" placed N.V. in a situation that endangered her life or health. Appellant's App. p. 6

■ A person engages in conduct knowingly if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). Under the child neglect statute a "knowing" mens rea requires a subjective awareness of a "high probability" that a dependent has been placed in a dangerous situation. *Scruggs v. State,* 883 N.E.2d 189, 191 (Ind. Ct.App.2008). Because, in most cases, such a finding requires the factfinder to infer the defendant's mental state, this Court must look to all the surrounding circumstances of a case to determine if a guilty verdict is proper. *Id.*

Here, the State presented evidence that on August 9, 2008, Martin was in the kitchen with N.V. when she decided to run some errands. Tr. p. 55–56. Martin

---

**2.** Ind.Code § 35–46–1–4(a)(1).

walked into the living room, where Villagrana was watching television with Martinez to tell him that she was leaving, that N.V. was in the kitchen, and instructed him to watch her. *Id.* at 57–58. Martin repeated herself because "I could see that he was watching TV and maybe wasn't paying that much attention." *Id.* at 58. Villagrana responded, "Okay," and Martin exited the front door. *Id.* at 58.

Villagrana waited until the next commercial and then went to the kitchen to get N.V. something to eat. Tr. p. 107. Because Villagrana believed that N.V. was with his aunt, he went upstairs, calling for N.V. *Id.* at 106, 108. When Villagrana realized that N.V. was not with his aunt, he looked more thoroughly for her downstairs and then returned upstairs to search every bedroom. *Id.* at 109. Villagrana returned downstairs to the laundry room where he noticed that the back door was open and realized that N.V. had gone outside and asked Martinez to help him find her. *Id.*

In the meantime, N.V. had managed to get outside and Shank testified that she saw N.V. unattended and heading towards Shank. Tr. p. 4. Shank stated that she waited with N.V. five to ten minutes before taking her back to Shank's house to call the police and DCS. *Id.* at 9. After making the calls, Shank and N.V. returned to the same corner where Shank had found her. *Id.* at 10. About five minutes later, Officer Yeager arrived. *Id.* at 11. Officer Yeager testified that he was there approximately five or ten minutes before a young male joined them followed closely by Villagrana. *Id.* at 47.

In light of this evidence, we cannot conclude that the State presented sufficient evidence establishing that Villagrana was subjectively aware of a high probability that N.V. had been placed in a dangerous situation. More particularly, the evidence shows the entire incident occurred within approximately twenty minutes, during which Villagrana either thought that N.V. was with his aunt or was searching for her.

That being said, we do not intend for our conclusion to be interpreted as approval for Villagrana's inattention to his daughter. To be sure, Villagrana's conduct was negligent. Nevertheless, negligence does not satisfy the requisite mens rea under the child neglect statute, which requires that the defendant engage in the prohibited conduct intentionally or knowingly. Put another way, Indiana does not criminally penalize those who negligently neglect a dependent. Here, the State presented insufficient evidence to show that Villagrana acted "knowingly" and, therefore, presented insufficient evidence to sustain his conviction for class D felony neglect of a dependent, and we reverse the decision of the trial court.

The judgment of the trial court is reversed.

KIRSCH, J., and BROWN, J., concur.