## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 27 2017, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Diana S. Davis, | January 27, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 58A01-1607-CR-1737 |
| v. | Appeal from the Ohio Circuit Court |
| State of Indiana, | The Honorable James D. Humphrey, Judge |
| *Appellee-Plaintiff* | The Honorable Kimberly A. Schmaltz, Magistrate |
| | Trial Court Cause No. 58C01-1506-F6-25 |

**Vaidik, Chief Judge.**

# Case Summary

Diana Davis appeals her conviction for neglect of a dependent, arguing that the evidence is insufficient to support her conviction. Finding no error, we affirm.

# Facts and Procedural History

In June 2015, Davis lived in a trailer home near the Dearborn-Ohio county line with three of her ten children, including her teenage son, D.V., and her almost-two-year-old toddler, N.A.D. The home is bordered by Laughery Creek and State Road 262, which has a speed limit of 55 miles per hour. Davis's driveway led directly to State Road 262.

Around 10:00 a.m. on June 6, Vanessa and Ricky Knigga were driving past Davis's trailer on State Road 262 when they noticed an unattended toddler, N.A.D., following several dogs down Davis's driveway, headed for State Road 262. Concerned for the child's safety, Vanessa had her husband pull over; she jumped out of the car and ran toward N.A.D. By the time she reached N.A.D. he had walked onto the shoulder of State Road 262. Vanessa got him off the highway and led him back up the driveway toward his home. Vanessa heard Davis's German Shepherd barking near the home and chose to stay in the driveway with N.A.D. for fear of being attacked.

Meanwhile, Ricky turned the car around and pulled over in front of Davis's driveway. To get the attention of anyone inside, Ricky started "blowing the horn" but to no avail. Tr. p. 72. He blew the horn for approximately fifteen

minutes, "lay[ing] on it . . . for a minute at a time," at which point Vanessa decided to call 911. *Id.* at 57. Roughly fifteen minutes after calling 911 and while waiting for police to arrive on the scene, Ricky spotted an off-duty police officer driving a marked police car and flagged down the officer. Officer Brian Potts with the Lawrenceburg Police Department pulled over and assisted the Kniggas, taking N.A.D. from Vanessa and carrying him to the trailer.

[5]     As Officer Potts approached the trailer, he noticed that the gate to the yard was wide open as well as the front door to the trailer. He stood at the threshold of the front door, yelled "Lawrenceburg Police," and started banging on the door. *Id.* at 95. He identified himself because he was in plain clothes but was carrying his off-duty firearm on his hip. Roughly ten feet inside the door fifteen-year-old D.V. was sleeping in a chair. D.V. slept through the yelling and banging on the door. Officer Potts entered the trailer, continued yelling "Lawrenceburg Police," and started "slamming [his] fist against the door, trying to make as much noise as possible." *Id.* at 96. Yet D.V. continued to sleep.

[6]     After several minutes of Officer Potts yelling and slamming his fist against the door in order to wake D.V. or get anyone else's attention, Davis walked out of a side room, the door to which had been open the entire time. When she saw Officer Potts holding N.A.D., all Davis said was, "Where did you find him?" *Id.* at 99. Davis never asked who Officer Potts was, why he was inside her home, or why he was holding N.A.D. After learning that N.A.D. was outside unattended, Davis responded that he "couldn't have been outside too long,

because his socks weren't dirty." *Id.* at 100. Davis was arrested and charged with neglect of a dependent as a Level 6 felony.

[7] At the jury trial, D.V. testified that he was supposed to be watching N.A.D. while Davis was getting ready for a yard sale. He took N.A.D. into the living room to play—putting out toys on the floor and turning on the TV to cartoons. He stated that he slept through the dog barking, the honking car horn, and Officer Potts's yelling and banging because both the washer and dryer were running, the air conditioner and fans were on, and the TV was on. D.V. admitted that he had a juvenile adjudication for theft, a crime of dishonesty. In response, Officer Potts testified that he was never told that D.V. was supposed to be watching N.A.D. Officer Potts stated that the trailer was very hot and that he did not remember the air conditioner or fans being on; he did not see any toys on the living-room floor or hear the TV; and he did not remember hearing the washer and dryer running. The jury found Davis guilty as charged.

[8] Davis now appeals.

# Discussion and Decision

[9] Davis argues that the evidence is insufficient to support her conviction for neglect of a dependent because the State failed to prove that she knowingly placed N.A.D. in a situation that endangered his life or health. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses; that role is reserved for the factfinder.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). "The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction." *Id.* A conviction will be affirmed "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.*

[10] In order to convict Davis of neglect of a dependent as charged here, the State had to prove that Davis was responsible for the care of N.A.D. and knowingly or intentionally placed N.A.D. in a situation that endangered his life or health.[1] *See* Ind. Code § 35-46-1-4(a)(1). For neglect of a dependent, "knowingly" requires a "subjective awareness of a high probability that a dependent has been placed in a dangerous situation." *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011). Davis argues that her "subjective awareness was that [N.A.D.] was in the home being supervised by a sibling" and that the State has not proven otherwise. Appellant's Br. p. 14.

[11] Vanessa testified that around 10:00 a.m. she witnessed N.A.D. outside unsupervised and walking on the shoulder of State Road 262. Both she and Ricky testified that they sat with N.A.D. for at least thirty minutes before Officer Potts drove by. No one came out of the trailer looking for N.A.D. during that time despite Ricky honking the car horn for minutes at a time.

---

[1] On appeal, the State only argues that Davis "knowingly" neglected N.A.D.

Officer Potts testified that Davis reacted to seeing him holding N.A.D. inside her home by simply asking "Where did you find him?" and that Davis told him that N.A.D. could not have been outside that long because his socks were not dirty. Officer Potts also identified several dangers around Davis's house for N.A.D., including State Road 262 and Laughery Creek. This evidence is sufficient to support Davis's conviction.

[12] As for Davis's argument that she thought D.V. was watching N.A.D., it amounts to a request for us to determine the credibility of witnesses, which is a job for the jury. The jury heard conflicting stories from D.V. and Officer Potts and had to decide which version of events to believe. D.V. testified that it was his responsibility to watch N.A.D. that morning, that he had set out toys and turned on the TV for N.A.D., and that the washer and dryer and the air conditioner were running inside the trailer. In contrast, Officer Potts testified that the gate to the yard and the door into the home were open, that neither Davis nor D.V. told him that D.V. was watching N.A.D. that morning, that there were no toys on the living-room floor, that the TV was not on, and that neither the washer or dryer nor the air conditioner were running. The jury is in the best place to judge the credibility of witnesses, especially when conflicting testimony is presented, and the jury was allowed to discredit D.V.'s testimony, particularly in light of his juvenile adjudication for theft, a crime of dishonesty.

[13]    We conclude that the evidence is sufficient to support Davis's Level 6 felony conviction for neglect of a dependent.[2]

[14]    Affirmed.

Bradford, J., and Brown, J., concur.

---

[2] Davis also argues that the trial court abused its discretion when it admitted testimony from Vanessa and Officer Potts regarding N.A.D.'s appearance, the trash in her yard, and the smell and condition of her home. Vanessa stated that N.A.D. "had a very wet diaper that was sagging to his knees. He was in a pair of socks and a wet diaper." Tr. p. 57. Officer Potts testified that N.A.D. was "very dirty" and wearing a diaper "soaked with urine" that ran down both of his arms, "soaking" them in urine. *Id.* at 87, 89, 96. Officer Potts also said that when he reached Davis's trailer that there was "junk trash everywhere" in the yard and that the home was "very dirty [with] a very pungent odor - - I about got sick from the odor . . . ." *Id.* at 90, 93. Davis objected to this testimony at trial, but the trial court overruled her objection. We conclude that this testimony was properly admitted and relevant to show that N.A.D. was neglected on June 6. Even without the challenged testimony, there is substantial independent evidence of guilt to support Davis's conviction, as discussed above.