FILED

Apr 20 2018, 10:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kavonya Jones,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 20, 2018<br><br>Court of Appeals Case No.<br>49A02-1708-CR-1950<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable David J. Certo,<br>Judge<br>The Honorable David Hooper,<br>Magistrate<br><br>Trial Court Cause No.<br>49G12-1609-CM-36641 |

**Bradford, Judge.**

# Case Summary

[1] On September 16, 2016, Kavonya Jones fled from police officers who were trying to locate an individual who was thought to be her boyfriend. She was subsequently charged with and convicted of Class A misdemeanor resisting law enforcement and Class A misdemeanor driving while suspended. On appeal, Jones challenges her conviction for resisting law enforcement. Specifically, Jones contends that the evidence is insufficient to sustain her conviction. Alternatively, she contends that the trial court erred in instructing the jury and in finding that alleged prosecutorial misconduct did not warrant a mistrial. Concluding that the evidence is sufficient to sustain the challenged conviction and finding no error by the trial court, we affirm.

# Facts and Procedural History

[2] At approximately 12:30 p.m. on September 16, 2016, Corporal Travazz Buckley, Deputy Brandon Berry, and Lieutenant Kenny Sanders (collectively, "the Officers"), all of the Marion County Sheriff's Department, were on duty working with the Department's warrant unit in Indianapolis. The Officers were attempting to locate Tyrone Esters, who had outstanding warrants for battery on law enforcement and burglary. Esters was described to the Officers as a "dark-complected, medium-sized male" who was about six feet tall and was known to change his hairstyle, sometimes wearing his hair in "dreads." Tr. Vol. II, p. 17.

[3] While attempting to locate Esters, the Officers conducted surveillance on a residence located at 4630 East 34th Street. The Officers chose this residence "based on information that [Jones] was living at the address and [because Lieutenant Sanders] had serval prior contacts with [Jones and] knew she was associated with" Esters. Tr. Vol. II, p. 16. Specifically, Jones "was known to [Lieutenant Sanders] as the girlfriend of Tyrone Esters at the time." Tr. Vol. II, p. 18. The Officers had also received information that Esters could be driving a gold "Chevy Malibu." Tr. Vol. II, p. 161. Lieutenant Sanders knew that Jones frequently drove a gold Malibu. While Corporal Buckley watched the residence, Lieutenant Sanders and Deputy Berry waited in a nearby parking lot.[1]

[4] Corporal Buckley observed Jones drive away from her residence in the gold Malibu. When Jones returned a short time later, Corporal Buckley observed a black male who appeared to match Esters's general description in the passenger seat of the vehicle. Corporal Buckley informed the other officers that he may have spotted their target. They then made their way to Jones's residence. Once Lieutenant Sanders arrived, he pulled his vehicle behind the gold Malibu and he and Corporal Buckley activated their emergency lights.

[5] After the Officers activated their emergency lights, Jones accelerated her vehicle such that "a little bit of dust kicked up." Tr. Vol. II, p. 163. Corporal Buckley

---

[1] Lieutenant Sanders did not initially approach the residence because he "had had contact with [Jones] previously, and he was afraid that his [undercover] vehicle might be noticed." Tr. Vol. II, p. 161.

was forced to swerve to avoid being hit by Jones who pulled out on to 34th Street "without stopping at the stop sign." Tr. Vol. II, p. 165. Jones then turned onto Drexel Avenue before stopping. Corporal Buckley testified that Jones "knows [his] truck" and that his lights and sirens were on as he approached her vehicle. Tr. Vol. II, p. 10.

[6] After Jones stopped her vehicle, the Officers ordered both Jones and the passenger to exit the vehicle. Once out of the vehicle, it was clear to the Officers that the passenger was not Esters. Nevertheless, Jones was placed under arrest for fleeing from the Officers and for driving with a suspended license.

[7] On September 17, 2016, the State charged Jones with Class A misdemeanor resisting law enforcement by fleeing and Class A misdemeanor driving while suspended. Before the matter proceeded to trial, Jones filed a motion to suppress in which she alleged that her arrest was illegal because the Officers did not have reasonable suspicion to stop her. Following a hearing, the trial court denied Jones's motion. At the end of trial, a jury found Jones guilty as charged.

# Discussion and Decision

[8] On appeal, Jones challenges her conviction for resisting law enforcement. Specifically, Jones contends that the evidence is insufficient to sustain her conviction. Alternatively, she contends that the trial court erred in instructing

the jury and in finding that the deputy prosecutor's alleged misconduct did not warrant a new trial.

# I. Sufficiency of the Evidence

In challenging her conviction for resisting law enforcement, Jones argues that the evidence is insufficient to prove that the Officers had reasonable suspicion to stop her.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[10] In order to prove that Jones committed the charged offense, the State was required to prove that Jones "knowingly or intentionally … fle[d] from a law enforcement officer after the officer ha[d] by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself … and ordered [her] to stop." Ind. Code § 35-44.1-3-1. The Indiana Supreme Court has found this statute to be constitutional. *Gaddie v. State*, 10 N.E.3d 1249, 1255 (Ind. 2014). In doing so, however, the Court stated the following:

> we hold that the statutory element "after the officer has … ordered the person to stop" must be understood to require that such order to stop rest on probable cause or reasonable suspicion, that is specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot. Absent proof that an officer's order to stop meets such requirements, the evidence will be insufficient to establish the offense of Resisting Law Enforcement by fleeing.

*Id*. Thus, in order to conclude that the evidence is sufficient to sustain Jones's conviction, we must also conclude that the Officers had reasonable suspicion to stop Jones.[2]

[11] In denying Jones's motion to suppress, the trial court determined prior to the start of trial that the Officers had reasonable suspicion to stop Jones. We review such determinations de novo. *See Robinson v. State*, 5 N.E.3d 362, 365

---

[2] We note that Jones does not dispute that she fled from the Officers. She only argues that the Officers did not have reasonable suspicion to stop her on the day in question.

(Ind. 2014); *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005) (providing that the determination of reasonable suspicion is a question of law that requires de novo review on appeal).

The record reveals that the Officers originally approached Jones's residence because they were trying to serve active warrants on Esters. They had reason to believe that Jones was dating Esters, Esters was staying at Jones's residence, and Esters could be using the vehicle that was commonly driven by Jones. The Officers also had a general physical description of Esters. Just before initiating the stop, Corporal Buckley observed a black male sitting in the passenger seat of Jones's vehicle that seemed to match Esters's general physical description. Although the passenger did not have dreadlocks, the Officers knew that Esters was prone to change his hairstyle, sometimes wearing his hair in dreadlocks and other times not. Further, the Officers were not able to definitively determine whether the passenger was Esters without approaching the vehicle. These articulable facts demonstrate that the Officers had reason to believe that Esters, a wanted felon with multiple active warrants, may have been the passenger in Jones's vehicle. Thus, we conclude that the evidence is sufficient to prove that the Officers had reasonable suspicion to stop Jones.

## II. Jury Instructions

Jones alternatively contends that the trial court erred in instructing the jury. Specifically, Jones argues that the trial court's instructions to the jury should have contained some reference to the fact that she could only be found guilty if

the Officers had probable cause or reasonable suspicion to initiate the stop. The record reveals that Jones did not make this argument before the trial court and, as such, must prove that the alleged error amounted to fundamental error. *See Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

[14] Instructing the jury is a matter within the sound discretion of the trial court and we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion. *Id.*

> We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions. Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case.
>
> ****
>
> Error is fundamental if it is a substantial blatant violation of basic principles and where, if not corrected, it would deny a defendant fundamental due process. This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in egregious circumstances that made a fair trial impossible.

*Id.* (internal citations and quotations omitted).

[15] Here, it is undisputed that the instruction tendered to the jury correctly lists the elements set forth in Indiana Code section 35-44.1-3-1(a)(3). As such, given the specific nature of Jones's appellate contention, the instruction can only be

found to be deficient if it was necessary to instruct the jury as to a finding of reasonable suspicion.

## A. Reasonable Suspicion

"The U.S. Supreme Court has declared that the Fourth Amendment's protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Armfield v. State*, 918 N.E.2d 316, 318 (Ind. 2009) (internal citation and quotation omitted). Under applicable precedent, "an officer is permitted to stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Id.* (internal quotations omitted). "Generally speaking, evidence obtained pursuant to an unlawful seizure must be excluded under the fruit of the poisonous tree doctrine." *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). "This extension of the exclusionary rule bars evidence directly obtained by the illegal search or seizure[.]" *Id.*

In this case, the question of whether the Officers had reasonable suspicion to initiate the stop first arose as a preliminary matter in Jones's motion to suppress. Evidence Rule 104(a) provides that the trial court "*must* decide any preliminary question about whether … evidence is admissible." (Emphasis added). "The court must conduct any hearing on a preliminary question so that the jury is not present and cannot hear if … justice so requires." Ind. Evid. Rule 104(c). Further, "[t]o the extent practicable, the court must conduct a jury

trial so that inadmissible evidence is not suggested to the jury by any means."
Ind. Evid. Rule 103(d). It is well-established that regarding the admissibility of
evidence, whether raised in a motion to suppress or at trial, trial courts have
broad discretion. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014); *Kelley v.
State*, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005); *Washington v. State*, 784
N.E.2d 584, 587 (Ind. Ct. App. 2003).

## B. Analysis

[18]    In ruling on Jones's motion to suppress evidence relating to the stop at issue,
the trial court conducted a preliminary hearing during which it considered
whether the Officers had reasonable suspicion to initiate the stop.[3] Thus, by the
time the matter proceeded to trial, the trial court had already determined that
the Officers had reasonable suspicion when they stopped Jones.[4] We believe
that the trial court's determination regarding reasonable suspicion satisfied the
requirement set forth in *Gaddie* that such a determination be made. *Gaddie* did
not specifically indicate that such was a question for the jury, *see* 10 N.E.3d at
1255, and Jones has pointed to no authority suggesting the question was one for
the jury. Thus, because the trial court had found that the Officers had

---

[3] It is generally understood that (1) reasonable suspicion is a legal conclusion made by the trial court, not a
factual finding made by a jury and (2) a conclusion of whether reasonable suspicion exists will often be based
upon facts that are not admissible before the jury.

[4] We note that while we were unable to find a case that explicitly states as such, a review of both Federal and
Indiana stop and seizure jurisprudence indicates that determinations of whether officers had reasonable
suspicion to initiate a stop are made by the trial court.

reasonable suspicion to initiate the stop, we do not believe that it was necessary to resubmit the question to the jury.

[19] Given that the question of whether the Officers had reasonable suspicion to stop Jones had been decided by the trial court and need not have been presented to the jury, we cannot say that the alleged deficiency in the challenged jury instruction amounted to error, much less fundamental error. We therefore conclude that the trial court did not abuse its discretion in instructing the jury.

## III. Alleged Prosecutorial Misconduct

[20] Jones also contends that the trial court erroneously determined that the cumulative effect of four alleged instances of prosecutorial misconduct did not unfairly prejudice her. Jones argues that the deputy prosecutor committed prosecutorial misconduct on four occasions during closing argument. Specifically, Jones claims that the deputy prosecutor committed prosecutorial misconduct by: (1) indicating that the State "would request that when you go into that jury room that you seek justice," tr. Vol. II, p. 183; (2) telling the jury that they could "take [the officer's] word for that," tr. Vol. II, p. 195; (3) stating that "[t]he officer testified today that she had seen him before in that unmarked vehicle," tr. Vol. II, p. 196; and (4) stating that "[n]obody was hurt when she flees from law enforcement, thankfully. But there could have been." Tr. Vol. II, p. 197.

[21] "In reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2)

whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Id*. "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*.

[22]
> When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. If the party is not satisfied with the admonishment, then he or she should move for mistrial. Failure to request an admonishment or to move for mistrial results in waiver. Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.

*Id*. (citations, quotation, and brackets omitted).

[23] As for the first two comments, the trial court sustained Jones's objections and admonished the jury to disregard the comments. We presume that the trial court's admonishment cured any potential harm. *See Green v. State*, 587 N.E.2d 1314, 1317 (Ind. 1992) (providing that appellate courts may presume that a

timely and accurate admonishment by the trial court will cure any defect); *see also Webster v. State*, 413 N.E.2d 898, 901, 274 Ind. 668, 673 (1980) (providing that "[o]n appeal, [appellate courts] must presume that the jury obeyed the trial court's instructions in reaching its verdict" and when the jury has been instructed not to consider specific evidence or argument, "we will assume that the jury followed the instructions.").

[24] As for the remaining two comments, the record reveals that although Jones objected to the statements, she did not request an admonishment or a mistrial. Jones, therefore, did not properly preserve her challenge to these comments and, as a result, must prove that the challenged comments amounted to fundamental error. *See Cooper*, 854 N.E.2d at 835.

[25] With respect to the comment that Jones had previously seen Lieutenant Sanders in his unmarked vehicle, Jones claims that the deputy prosecutor discussed a fact that had not been presented to the jury. The State concedes that prosecutors may not argue facts not in evidence, *Neville v. State*, 976 N.E.2d 1252, 1263 (Ind. Ct. App. 2012), but argues that did not happen here. The record reveals, contrary to Jones's claim, that the record contained such testimony. Specifically, Lieutenant Sanders testified, without objection, that he had been driving the same unmarked Dodge Charger when he had had prior interactions with Jones. As such, the deputy prosecutor did not mention a fact not presented to the jury, but rather a fact that was admitted, without objection, through Lieutenant Sanders's testimony.

[26] With respect to the comment suggesting that someone could have been hurt when Jones fled from law enforcement, Jones claims that this comment was improper as it "only served to frighten the jury." Appellant's Br. p. 16. We disagree. After defense counsel attempted to argue that Jones's flight did not matter because it was so short in duration, the State responded as follows:

> We are talking about a 10 to 15 second resist, but does that 10 to 15 seconds not matter? It does. Nobody was hurt when she blew through that intersection. Nobody was hurt when she flees from law enforcement, thankfully. But there could have been.

Tr. Vol. II, p. 197. Even if this statement was ordinarily objectionable, it was made in response to defense counsel's argument that Jones's act of fleeing from the Officers was so short in duration that it should not matter. "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper*, 854 N.E.2d at 836. As such, we cannot say that the deputy prosecutor's comment was improper, much less that it amounted to fundamental error.

[27] Furthermore, we do not agree with Jones's claim that the cumulative effect of the deputy prosecutor's allegedly improper statements rendered a fair trial impossible. In addition to the specific admonishments to disregard the first two challenged comments, the trial court also instructed the jury that any "[s]tatements made by the attorneys are not evidence." Appellant's App. Vol. II, 136. Again, we assume the jury followed the trial court's instructions and did not consider the deputy prosecutor's statements to be evidence. *See Green*,

587 N.E.2d at 1317. We agree with the State that the cumulative impact of the prosecutor's allegedly improper statements was minimal given the evidence of Jones's guilt. As such, we conclude that the trial court did not abuse its discretion in finding that the alleged prosecutorial misconduct did not warrant a mistrial.

# Conclusion

[28] In sum, we conclude that the evidence is sufficient to sustain Jones's conviction for Class A misdemeanor resisting law enforcement. We also conclude that the trial court did not abuse its discretion in instructing the jury or in finding that the alleged prosecutorial misconduct did not warrant a mistrial.

[29] The judgment of the trial court is affirmed.

Baker, J., and Kirsch, J., concur.