## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory Bowes
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cheyanne V. Meredith, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 11, 2019 <br><br> Court of Appeals Case No. 19A-CR-1332 <br><br> Appeal from the Brown Circuit Court <br><br> The Honorable Mary H. Wertz, Judge <br><br> Trial Court Cause No. 07C01-1808-F6-410 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Cheyanne Meredith (Meredith), appeals her convictions for two Counts of neglect of a dependent, Level 6 felonies, Ind. Code § 35-46-1-4(a)(1).

We affirm.

# ISSUES

Meredith presents three issues on appeal, which we restate as:

> (1)  Whether the State proved the offenses beyond a reasonable doubt;
>
> (2)  Whether the trial court abused its discretion when it instructed the jury on alternate juror participation; and
>
> (3)  Whether the trial court abused its discretion when it denied Meredith's motions for mistrial based on the State's final arguments.

# FACTS AND PROCEDUARL HISTORY

Meredith is the mother of two girls, K.M. and A.M., who were two and three years old in the summer of 2018.[1]  Meredith and the girls were living in a trailer on Sweetwater Trail in Brown County, Indiana.  On August 1, 2018, Meredith allowed K.M. and A.M. to play in a camper parked on the trailer's property.

---

[1]  It is unclear from the record which of the girls is older.

The camper was forty-seven and one-half feet from Sweetwater Trail, which is a hilly, curvy road that, despite traversing rural Brown County, is a main thoroughfare that is heavily traveled, especially in the summertime. There was no fence or natural barrier between the camper and Sweetwater Trail. A pond was also located approximately 200 feet from the camper, with no obstructions between the pond and the camper. Meredith was on the porch of the trailer on the north side of the camper where she could not see the camper's exit door. Meredith was looking at a live chat on her cellphone, an activity that, according to Meredith's sister, Meredith engaged in frequently and one which absorbed Meredith's attention when she did it.

[5] At dusk on August 1, 2018, Steppin Quillen and his wife, Angel, were driving home southbound on Sweetwater Trail. They suddenly came upon two toddlers, later identified as K.M. and A.M., in the middle of the road. Steppin was forced to apply his brakes quickly in order to avoid hitting the children. As the Quillens stopped to investigate, K.M. and A.M. ran across the road and under a boat in front of a home located approximately 600 feet from Meredith's trailer. The residents of the home did not know the children. Steppin called 9-1-1.

[6] While waiting for law enforcement to arrive, the Quillens, another motorist who had stopped to help, and the residents of the home where the children had been found tended to the toddlers. The older child was wearing only a pair of underwear. The younger child was clad in a diaper that was so saturated with urine that the front portion of the diaper had become detached with its weight

and dragged on the ground, exposing her genitals. All of the adults present noted that K.M. and A.M. were covered in ground-in dirt as though they had not been bathed recently. The children's hair was matted, and each was carrying a piece of hardened toast. The adults provided K.M. and A.M. with clothing and food.

[7] From their unobstructed viewpoint in the yard of the home where the girls were found, the adults tending to the children eventually saw Meredith walk up to Sweetwater Trail near her trailer, look around, and disappear from view. Some of the adults heard Meredith shouting. When a sheriff's deputy arrived and left his cruiser's emergency lights shining, he too observed Meredith come up to Sweetwater Trail near her trailer, look around, and disappear from view. After the deputy had been on the scene for approximately fifteen minutes, Meredith walked up to the adults tending to her children. Initially, a boy under the age of ten accompanied her, but she loudly admonished the boy to return to the trailer. The boy walked back to the trailer by himself. The deputy present advised Meredith to keep the boy from walking in the roadway. When Meredith arrived, and while standing approximately ten feet away from one of her daughters, she asked if anyone had seen her children. Meredith did not appear frantic, did not inquire about the well-being of the girls, and did not move to make contact with either child.

[8] On August 31, 2018, the State filed an Information, charging Meredith with two Counts of Neglect of a Dependent. On April 17, 2019, Meredith's two-day jury trial began. Meredith's counsel tendered a preliminary instruction that

proposed to inform the alternate juror that "you will retire with the jury during recesses, but you are ordered not to participate in the discussions." (Appellant's App. Vol. II, p. 65). The trial court rejected the proposed preliminary instruction in favor of a pattern instruction which provided in relevant part, "You have been selected as jurors . . . You are permitted to discuss the evidence among yourselves in the jury room during recesses from trial but only when all jurors and alternates are present." (Appellant's App. Vol. II, p. 75). The trial court accepted Meredith's proposed final instruction to the alternate juror which provided in relevant part as follows:

> Your duties are the same as those of the regular jurors, except you must not participate in the deliberations or voting of the jury, either verbally or non-verbally, unless I direct you to do so.

> The foreperson shall prevent an alternate juror from deliberating or voting with the jury. The foreperson shall promptly report any violation of this instruction to me.

(Appellant's App. Vol. II, p. 118).

[9] During closing argument, the State informed the jury that the definition of neglect is

> the want of reasonable care. That is the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind. Reasonable, ordinary. Do you hear that? Common sense.

(Transcript Vol. II, p. 238). Meredith's counsel objected to this argument on the basis that it was a misstatement of the law in that the State was attempting to inject a negligence standard into a criminal trial. The trial court sustained the objection and proposed to admonish the jury that its instructions would be the best source of the law of the case and that the parties were allowed to argue what the law meant. Meredith's counsel moved for a mistrial because the trial court would not admonish the jury that the State had misstated the law. The trial court denied the mistrial motion and admonished the jury in the manner it had proposed. Meredith's counsel subsequently offered his closing argument. During the State's closing rebuttal, it argued that

> I'm asking you this, if you believe that [two] toddlers found in the middle of a busy Brown County road, coupled with signs of neglect, coupled with a mother who did not appreciate emotionally the gravity of what could have happened to her children—if you believe that is not neglect and my office ought not pursue it and our county ought to accept such facts as mere parental mistakes, send me a message today and find her not guilty. On the other hand, if you find that this conduct is unacceptable under the totality of these circumstances, and do you want to send a message to [] Meredith that we, Brown County, do not accept this, type of behavior from a parent—

(Tr. Vol. III, pp. 19-20). Meredith's counsel objected to the State's argument. Acknowledging that he "let [the prosecutor] slide on that message for finding her not guilty," Meredith's counsel contended that the prosecutor was asking the jury to disregard the law. (Tr. Vol. III, p. 20). The trial court disagreed that the State had asked the jury to disregard the law, but proposed to admonish the

jury that it was not their job to send a message; rather, it was their job to base their decision solely on the facts and evidence of the case. Meredith's counsel insisted that the trial court admonish the jury that it was not the law in Indiana that Meredith could be found guilty simply because her children were found in a heavily trafficked street. The trial court refused the proposed admonishment on the basis that the State had not argued as Meredith's counsel said it had, whereupon Meredith's counsel again moved for a mistrial. The trial court denied the second mistrial motion and admonished the jury in the manner it had proposed.

[10] After deliberating for fifty-eight minutes during which it asked no questions, the jury found Meredith guilty as charged. On May 14, 2019, the trial court sentenced Meredith to concurrent two-year sentences, with ninety days executed, and the remainder suspended.

[11] Meredith now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[12] Meredith first argues that the State did not prove beyond a reasonable doubt that she committed the offenses. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the

conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

[13] The State charged Meredith with neglect of a dependent as follows:

> On or about August 1, 2018, . . . Meredith having the care of A.M., a dependent, did knowingly place said dependent in a situation that endangered the dependent's life or health, all in violation of Ind. Code [§] 35-46-1-4(a)(1).

(Appellant's App. Vol. II, p. 14). The second Count pertaining to K.M. was identical apart from the identity of the victim. A person acts "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). In the context of a charge of neglect of a dependent, a "knowing" intent requires a subjective awareness of a high probability that a dependent has been placed in a dangerous situation. *Villagrana v. State*, 954 N.E.2d 466, 468 (Ind. Ct. App. 2011). Because a defendant's intent in a neglect case must be inferred, on appeal, we must examine all the surrounding circumstances of the case to determine if the jury's verdict is proper. *Burden v. State*, 92 N.E.3d 671, 675 (Ind. Ct. App. 2018).

[14] Meredith contends that the State failed to show that she knowingly placed her children in danger. However, the evidence showed that Meredith allowed her two daughters, who were two and three years old, to play in a camper while she sat on the porch of the trailer, absorbed in viewing a live chat on her cellphone. Meredith admitted later that she could not see the exit of the camper from where she was sitting on the porch. The camper was located close to

Sweetwater Trail, a busy, hilly, curvy road, and the camper was close to a pond. Both Sweetwater Trail and the pond were in plain view, and there was no fence or natural barrier between the road or the pond and Meredith's two toddlers. Meredith knew the ages of her children, that they were outside at the camper, that she was looking at her cellphone, that she could not see the exit of the camper, and that there were a busy road and a pond nearby, directly accessible to her children. We conclude that the totality of these circumstances permitted an inference by the jury that Meredith was aware of a high probability that she was placing her children in a dangerous situation by essentially leaving them unattended close to at least two hazards.

[15]   Meredith asserts otherwise because she contends that "[w]ithout proving [] Meredith knew her children were heading off to walk down the busy road, and did nothing about it, the State failed to prove she subjectively knew of the danger her children put themselves in." (Appellant's Br. p. 14). We find this argument to be unpersuasive because it is based on the incorrect assumption that the State was required to show that Meredith had actual knowledge of the danger posed by her conduct. The State was not required to show that Meredith had actual knowledge of the danger; rather, the State was permitted to make its case by showing that Meredith knew of a high probability that she was placing her children in danger. *Villagrana*, 954 N.E.2d at 468.

[16]   Meredith also argues that she only knew that her daughters were playing in the side yard in the camper, she was beside the camper, and that she could hear them playing and see their feet under the camper. Meredith further draws our

attention to evidence she contends shows that A.M. and K.M. were only missing a few minutes, she began looking for them quickly, and that she was concerned when she noticed they were missing. However, as noted above, Meredith knew that she could not see the exit of the camper, she was attending to her cellphone while her children were playing, and there was nothing obstructing her children from the road or the pond. We also find these arguments unavailing inasmuch as they invite us to reweigh the evidence of the case and to consider evidence that does not support the jury's verdict, both of which are contrary to our standard of review. *See Drane*, 867 N.E.2d at 146.

[17]     Meredith likens her case to *Villagrana v. State* in which this Court reversed a Level 6 felony neglect of a dependent conviction involving a child being found unattended close to a street. *Villagrana*, 954 N.E.2d at 469. In that case, the mother of Villagrana's two-year-old daughter asked Villagrana to watch their daughter while the mother ran errands. *Id*. at 467. Villagrana assented but was watching TV and thought the child was upstairs with another adult in the home. *Id*. at 467-68. At the next commercial break, Villagrana went upstairs to give his daughter food and discovered that she was not there. *Id*. at 469. Unbeknownst to him, his daughter had pushed her way through the unlocked back door and was outside where she was found close to a street. *Id*. As soon as he discovered her missing, Villagrana began searching for his daughter. *Id*. The court found that, while the State had shown that Villagrana had acted negligently, it had not shown that he acted knowingly because the entire

incident only lasted twenty minutes, during which Villagrana either thought his daughter was with another adult or he was out looking for her. *Id.*

[18] We conclude that this case differs from *Villagrana* in at least two key respects. Unlike Villagrana, Meredith was under no misapprehension that someone else was watching her children as she sat on the porch of the trailer looking at her cellphone. We also find Meredith's case to be distinguishable from *Villagrana* because Villagrana was unaware that the back door to his home was unlocked, allowing his two-year-old to push through to the outside. Here, Meredith knew that her children were already outside in an unfenced yard, and she knew she could not see the exit to the camper where they were playing. There were no facts in the record supporting an inference that Meredith thought there was anything stopping her children from accessing the road or the pond apart from her attentiveness, which the jury found was lacking that day.

[19] As part of her argument attacking the sufficiency of the evidence, Meredith also contends that the State improperly relied upon an objective standard of knowledge at trial when it argued in closing statements that Meredith "'knew or should have been aware of. Should have been aware of a high probability. Should have been aware of.'" (Appellant's Br. pp. 12-13). Meredith did not object to this argument at trial, and, therefore, she has waived it as a claim of prosecutorial misconduct. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Meredith does not claim this argument constituted fundamental error. In addition, the jury was instructed that a person acts knowingly "if, when she engages in this conduct, she is aware of a high probability that she is doing so."

(Appellant's App. Vol. II, p. 105). The jury was presumed to have followed this instruction. *Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015). Meredith does not argue that this presumption was surmounted. Because we find that there was sufficient evidence from which the jury could infer that Meredith was aware of a high probability that she had placed her children in a situation which endangered their lives, we affirm the jury's verdicts.

## II. *Jury Instruction*

[20] Meredith also claims that the trial court abused its discretion when it gave what she contends were inconsistent jury instructions on the alternate juror's participation in discussions during trial and during deliberations, thus allowing the "alternate juror to assert improper influence on the regular jurors." (Appellant's Br. p. 15). We begin by noting that jury instruction is a matter within the discretion of the trial court, and we will reverse a trial court's instructional decision only upon an abuse of that discretion. *Cardosi v. State*, 128 N.E.3d 1277, 1284 (Ind. 2019). In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence supporting the instruction; and (3) whether the substance of the instruction was covered by other instructions given by the trial court. *Thomas v. State*, 61 N.E.3d 1198, 1201 (Ind. Ct. App. 2016), *trans. denied*.

[21] Meredith contends that the trial court's preliminary and final instructions were inconsistent because the trial court preliminarily instructed the alternate that it could participate in discussions with jurors during recesses but that it issued a

final instruction that the alternate juror could not participate in discussions until instructed to do so. We find that Meredith mischaracterizes the nature of the instructions given by the trial court. The trial court's preliminary instruction to the jurors was that "[y]ou are permitted to discuss the evidence among yourselves in the jury room during recesses from trial but only when all jurors and alternates are present." (Appellant's App. Vol. II, p. 75). The trial court's final instruction was that the alternate juror must not participate in the "deliberations or voting" of the jury unless instructed by the trial court. (Appellant's App. Vol. II, p. 118). There was no inconsistency between these instructions because they covered two distinct phases of the trial—discussions during the reception of the evidence and deliberations and voting after the close of the evidence. *See Weatherspoon v. State*, 912 N.E.2d 437, 441 (Ind. Ct. App. 2009) ("[O]ur [s]upreme [c]ourt has unambiguously made a distinction between discussions and deliberations."), *trans. denied*.

[22] What is more, the Indiana Jury Rules, as promulgated by our supreme court, provide that the trial court shall give the jury certain preliminary instructions before opening statements, one of which is that

> jurors, including alternates, are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they reserve judgment about the outcome of the case until deliberations commence.

Ind. Jury Rule 20(a)(8). Thus, the preliminary instruction given by the trial court was not an abuse of discretion because it was supported by Jury Rule

20(a)(8) and was a correct statement of the law. *See Thomas*, 61 N.E.3d at 1201. While Meredith argues that allowing jurors to participate in discussions prior to deliberations allows the alternate to somehow improperly influence the regular jurors, the Jury Rules expressly provide for it, and "[w]e are not at liberty to rewrite the rules promulgated by our [s]upreme [c]ourt." *Weatherspoon*, 912 N.E.2d at 441. Accordingly, we find no error in the trial court's instructions on the role of the alternate juror.

### III. *Motions for Mistrial*

[23] Meredith's last argument is that the trial court erred when it denied her two motions for mistrial based on what she contends were improper closing arguments by the prosecutor. "A mistrial is an extreme remedy invoked only when no other curative measure can rectify the situation." *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind. Ct. App. 1999). We review a trial court's denial of a motion for mistrial only for an abuse of discretion, and its decision is afforded great deference on appeal because the trial court is in the best position to assess all of the circumstances and their impact on the jury. *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001).

[24] Meredith's mistrial motions were based upon alleged prosecutorial misconduct. "'In reviewing a properly preserved claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected.'" *Jones v. State*, 101 N.E.3d 249, 257 (Ind. Ct. App. 2018) (quoting *Cooper v. State*,

854 N.E.2d 831, 835 (Ind. 2006)), *trans. denied*. Whether a prosecutor's closing argument amounts to misconduct is determined by reference to case law and the Rules of Professional Conduct. *Id*. The gravity of peril resulting from the challenged argument is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of the impropriety of the conduct involved. *Id*.

### A. *Reference to Neglect Definition*

[25] Meredith's first claim of prosecutorial misconduct pertains to the prosecutor's closing argument in which he provided the jury with a definition of "neglect" as "the want of reasonable care. That is the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind. Reasonable, ordinary." (Tr. Vol. II, p. 238). At trial, Meredith objected to this definition as a misstatement of the law pertaining to this neglect of a dependent case, a claim that she reiterates on appeal. The State counters that the prosecutor did not commit misconduct by misstating the law because the definition of neglect "has long been established[.]" (Appellee's Br. p. 25).

[26] Assuming, without deciding, that the prosecutor committed misconduct by arguing the definition of "neglect" to the jury, we conclude that Meredith has failed to show that she was placed in grave peril with this isolated reference. Meredith argues that, without a specific admonishment that the State had misstated the law, the "jury was free to base its decision on a misstatement of the law." (Appellant's Br. p. 17). However, upon Meredith's objection to the State's line of argument, the trial court admonished the jury that the parties

were free to argue what they thought the law meant but that the trial court's instructions were the best source of law for the case. In its final instructions, the trial court provided the jury with correct statements of the elements of the offense and the "knowing" *mens rea* required, advised the jury it was the judge of the law and the facts of the case, and reiterated that its instructions were the best source of the law. A definition of "neglect" was not part of the trial court's final instructions. Final instructions are presumed to correct any misstatements of law made during final argument. *See Steinberg v. State*, 941 N.E.2d 515, 531 (Ind. Ct. App. 2011) (holding that the trial court's correct final instructions on the elements of the offense, that the jury was judge of both the law and the facts, and that its instructions were the best source for law cured any prejudice flowing from the prosecutor's incomplete statement of the law), *trans. denied*; *see also Flowers v. State*, 738 N.E.2d 1051, 1059 (Ind. 2000) (holding that any peril resulting to defendant from the prosecutor's implication during closing argument that the burden of proof shifted to defendant was *de minimis* and was cured by the trial court's proper instructions); *Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999) (holding that any peril resulting from prosecutor's incorrect statement of the elements of the offense during closing argument was cured by his other argument correctly citing all elements of the offense and the trial court's correct instructions). Here, the jury asked no questions during deliberations, so there is no direct evidence in the record that it was confused regarding the correct legal standards to be applied in this case. We conclude that it was improbable that the prosecutor's remark had any

persuasive effect on the jury and that the trial court did not abuse its discretion in denying Meredith's motion for mistrial. *See Mickens*, 742 N.E.2d at 929.

### B. *Argument on the Evidence of the Case*

[27] In the rebuttal portion of the State's closing argument, it asked the jury to acquit Meredith of the offenses if it believed that "[two] toddlers found in the middle of a busy Brown County road, coupled with signs of neglect, coupled with a mother who did not appreciate emotionally the gravity of what could have happened to her children . . ." did not constitute neglect. (Tr. Vol. III, p. 19). It also requested that the jury find Meredith guilty if it found her conduct unacceptable under the "totality of these circumstances." (Tr. Vol. III, p. 19). Meredith's counsel objected to this argument on the basis that it was not a correct statement of the law that Meredith could be found guilty of neglect "merely because her children are found in a heavily trafficked street[.]" (Tr. Vol. III, p. 23). The trial court refused Meredith's request to admonish the jury that the State had misstated the law and denied her motion for mistrial.

[28] On appeal, Meredith argues that "[b]y leaving the jury with the impression that it could convict merely on evidence that [] Meredith allowed her children to play near a busy road, the State's improper argument left her in a position of grave peril." (Appellant's Br. p. 18). However, the factual basis of Meredith's argument is incorrect, as the State explicitly relied on other evidence, including what it contended were other signs of neglect and Meredith's nonplussed response upon being reunited with her children, in arguing its case to the jury. Thus, the State did not argue that the jury could convict based simply on the

fact that children were found in the roadway. Rather it asked the jury to find Meredith guilty based on the "totality of these circumstances." (Tr. Vol. III, p. 19). As a result, Meredith has failed to demonstrate that the prosecutor engaged in any misconduct.[2] *See Jones*, 101 N.E.3d at 257. We conclude, therefore, that the trial court did not abuse its discretion in denying Meredith's second motion for mistrial. *See Mickens*, 742 N.E.2d at 929.

## CONCLUSION

[29] Based on the foregoing, we conclude that the State proved the offenses beyond a reasonable doubt, the trial court did not abuse its discretion in instructing the jury on the role of the alternate juror, and that the trial court did not abuse its discretion in denying Meredith's motions for mistrial.

[30] Affirmed.

[31] Baker, J. and Brown, J. concur

---

[2] Because we conclude that neither portion of the State's argument challenged by Meredith on appeal placed her in a position of grave peril, we also reject her argument that the cumulative effect of that argument placed her in grave peril.